DANA L. FULLER & others *vs.* MAYOR OF MEDFORD & another.

Middlesex. March 17, 1916. — May 18, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Medford. Municipal Corporations,* General meetings, Officers and agents, Order of aldermen.

Section 7 of St. 1903, c. 345, the charter of the city of Medford, as amended by St. 1906, c. 252, § 1, is as follows: "General meetings of the inhabitants of the city may from time to time be held, according to the right secured to the people by the Constitution of the Commonwealth; and such meetings may, and upon the request in writing of fifty qualified voters setting forth the purposes thereof shall, be called by the board of aldermen. The board, upon request in writing of twenty-five per cent of the qualified voters, shall order placed upon the official ballot for a municipal election any question of public interest set forth in such request, provided that such question can be answered by 'Yes' or 'No.'" *Held,* that the vote provided for by the last part of this section is merely advisory and that such a vote cannot take away or suspend any powers of the board of aldermen of that city.

Accordingly a petition signed by twenty-five per cent of the qualified voters of that city presented to the board of aldermen requesting that there be placed on the official ballot at the next municipal election to be held in about eleven months from that time the questions, whether a city hall should be built and, if to be built, whether it should be built under the supervision of three or more citizens, does not take away or suspend the power of the board of aldermen of that city to pass an order for the construction of a city hall; and a subsequent vote by the

voters of the city at the next municipal election not to borrow or appropriate money for a city hall has no binding effect on the city.

In such a case, a bill in equity under R. L. c. 25, § 100, by ten taxable inhabitants of the city of Medford to restrain the mayor and city treasurer of that city from borrowing money to construct a city hall will be dismissed, as here was ordered.

Section 16 of St. 1903, c. 345, the charter of the city of Medford, provides that any order of the board of aldermen may be passed through all its stages at one session by unanimous consent of the members of the board present, and that, should one member or more object, action on the measure shall be postponed for at least one week. An order to construct a city hall accompanied by a letter from the mayor was presented to the board of aldermen of that city at a regular meeting and was referred to a committee. The committee unanimously recommended the adoption of the order by a report which was presented to the board of aldermen at a meeting held two weeks later. Its adoption was moved and, after discussion, the order was adopted on a roll call by the votes of sixteen members in the affirmative and three in the negative. *Held,* that the order was not passed through all its stages at one session, as its presentation at the meeting when it was referred to a committee was its first reading and constituted one stage, so that its passage two weeks later was upon its second stage, and that therefore it was not necessary to consider whether a negative vote was equivalent to an objection.

RUGG, C. J. This is a bill in equity under R. L. c. 25, § 100, by ten taxpayers of the city of Medford,* to restrain the mayor and city treasurer of that city from borrowing money to construct a city hall in accordance with an order of the board of aldermen dated January 25, 1916. The main contention is that the order authorizing the action sought to be enjoined is invalid because the voters of the city at the municipal election in 1913 voted not to borrow or appropriate money for a city hall, which vote has not been revoked or amended.

This contention is founded on § 7 of the city charter of Medford. St. 1903, c. 345, as amended by St. 1906, c. 252, § 1.† That section contains two sentences referring to two different matters.

---

* The case was heard by *Loring,* J., who ruled that the bill should be dismissed, but at the request of the defendants in order that the matter might be adjudicated speedily, reserved the case for determination by the full court.

† That section is as follows: "General meetings of the inhabitants of the city may from time to time be held, according to the right secured to the people by the Constitution of the Commonwealth; and such meetings may, and upon the request in writing of fifty qualified voters setting forth the purposes thereof shall, be called by the board of aldermen. The board, upon request in writing of twenty-five per cent of the qualified voters, shall order placed upon the official ballot for a municipal election any question of public interest set forth in such request, provided that such question can be answered by 'Yes' or 'No.'"

The first relates to general meetings of citizens. It provides for the exercise of the right secured by art. 19 of the Declaration of Rights. It is a provision almost universally found in city charters. *Wheelock* v. *Lowell,* 196 Mass. 220, 226. The purpose of that sentence in general is to enable the voters to have full and free discussion and consultation upon the merits of candidates for public office and of measures proposed in the public interests. Its importance in this respect is of the highest moment. See *Commonweath* v. *Porter,* 1 Gray, 476. It never has been suggested, so far as we are aware, that the vote of such a meeting had a legally binding force upon the city. It certainly can have no bearing upon its financial obligations. The second sentence of § 7 relates to the general subject of ascertaining the view of such voters as choose thus to express themselves upon any question of public interest which can be answered by a plain affirmative or negative. Its collocation with the other sentence in one section is some indication that it is of the same general character. It is in the briefest possible phrase and contains no words expressive of the effect of such vote. The force to be given it rests entirely upon implication. The natural inference is that its force and effect is the same as that of the other form of expression of public opinion with which it stands combined in one section, which is a provision long known in legislation and whose force and effect are well understood. It hardly can be presumed, in the absence of a definite enactment to that end, that the Legislature intended such a vote to bind the city absolutely and to fix finally the municipal policy upon the subject of the vote.

The conception of the referendum as to definite measures of local administration in cities is a comparatively new one in the legislation of this State. While it has been the legislative practice for a long time to make the taking effect of a statute of local concern in a particular municipality dependent upon acceptance in some form, *Barnes* v. *Chicopee,* 213 Mass. 1, 4, it is only within recent years that what are popularly known as the initiative and referendum have been applied in matters involving policy as to particular measures of improvement. *Graham* v. *Roberts,* 200 Mass. 152. It is hardly to be inferred that so radical a departure in municipal government would have been undertaken in any city without plain words indicative of that purpose.

It may well have been thought that the machinery for the expression of an advisory opinion by the voters of a city at a public meeting was quite inadequate, in view of the inconvenience of gathering at a single hall a substantial proportion of the citizens, and that this should be supplemented by giving to any voter the privilege of expressing his view so that it would be counted. Advisory expressions of public opinion participated in by large numbers of people may have been deemed likely to be a sufficiently strong incentive to action by city officers. It is no idle form to secure a definite conception in this form of what the people think on any subject of general interest. Ample scope thus is given for the operation of the language of the section without stretching it to include that which, when intended, commonly is expressed by clear words.

When the Legislature has designed to give binding force to an initiative or referendum vote, it has been able to find expression for that purpose in unmistakable words. See, for example, the city charters referred to in the footnote, where provisions in this respect are clear.*

The conclusion seems to us inevitable that the effect of the referendum vote of the voters of Medford in 1913 had no more than an advisory effect and did not prevent the board of aldermen from dealing with the subject as it deemed wise at any time.

Shortly before the order in question was passed by the board of aldermen, a petition signed by twenty-five per cent of the qualified voters of the city was presented to the board, requesting that there be placed on the official ballot at the municipal election for 1916 the questions whether a city hall should be built and whether, if to be built, it should be built under the supervision of three or more citizens. What has been said disposes in substance of the contention that the filing of this petition operated to stay the right of the board of aldermen to pass the order until after such election. It cannot have been the intent of the Legislature to

---

* St. 1908, c. 611, §§ 27, 28, 29, Gloucester. St. 1908, c. 574, §§ 42, 43, Haverhill. St. 1910, c. 602, Part I, §§ 64, 65, Lynn. St. 1911, c. 621, Part I, §§ 45, 53, Lawrence. St. 1911, c. 680, Part I, §§ 54, 55, Chelsea. St. 1911, c. 645, §§ 60, 61, Lowell. St. 1914, c. 680, §§ 25, 26, Attleborough. St. 1914, c. 609, §§ 28, 29, Westfield. St. 1911, c. 732, Part III, § 55, Pittsfield. St. 1911, c. 531, § 69, Cambridge. St. 1915, c. 267, Part I, § 42, General Act.

suspend all power of the municipality to act touching a matter to be voted on at the municipal election, then almost eleven months in the future, when the vote itself would be simply advisory and not compulsory in its effect. When the Legislature has intended that the filing of a petition for a referendum should have the effect of suspending the power of the municipal government to act in regard to the matter referred until after the popular vote, it has disclosed that intent by plain words. This is manifested by language used in the city charters referred to in the last footnote.

The city charter of Medford provides in § 16 * that an order of the board of aldermen may be passed through all its stages at one session by unanimous consent, but, if one member objects, the measure shall be postponed for at least one week. The single justice has found that "no one objected to the consideration of the passage of the order referred to." The record of the board of aldermen shows the order first was presented as accompanying a letter of the mayor on January 11, 1916. It then was referred to a committee. The committee unanimously recommended the adoption of the order by a report presented to the board of aldermen on January 25, 1916. Its adoption then was moved, and after discussion by several members it was adopted on a roll call by the votes of sixteen members in the affirmative to three in the negative. The order was not passed through all its stages at one meeting. It was or should have been read, and was referred to a committee at the meeting of January 11. In legislative bodies where several readings are required, and in the absence of special rule, that constitutes one stage or the first reading. The presentation at the meeting of January 25 was its second stage. Since the rules of the board of aldermen of Medford do not prescribe several readings of orders like this, that was its final stage. Therefore, even if it be assumed, but without so intimating, that a negative

---

* The whole of that section is as follows: "Any ordinance, order or resolution of the board of aldermen may be passed through all its stages of legislation at one session by unanimous consent of the members of the board present. Should one member or more object action on the measure shall be postponed for at least one week; and if when it is next considered five or more members object to its passage a second postponement for at least one week shall take place."

vote was equivalent to an objection, the order was at its final stage on January 25, 1916, having received its first consideration at the earlier meeting, and the objection of three members was not enough to require further postponement.

*Bill dismissed without costs.*

*E. E. Elder,* (*F. W. McGowan* with him,) for the plaintiffs.
*G. C. Scott,* (*C. S. Baxter* with him,) for the defendants.

