TIMOTHY F. RING & others *vs.* CITY OF WOBURN
(and three companion cases).

Middlesex.  April 9, 1942. — June 22, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*School and School Committee. Municipal Corporations*, Municipal finance. *Jurisdiction*, Justiciable question. *Statute*, Construction.

Statute 1939, c. 294, wrought changes in § 34 of G. L. (Ter. Ed.) c. 71 which did not affect the substantive duty of a municipality to provide an amount of money sufficient for the support of the public schools, but merely changed the remedy for failure to perform that duty, and it therefore was retroactive in its operation.

Whether, in a given case, a municipality has fulfilled the duty imposed on it by G. L. (Ter. Ed.) c. 71, § 34, in the form appearing in St. 1939,

c. 294, to "provide an amount of money sufficient for the support of the public schools as required by this chapter," presents a judicial question proper for determination upon the petition authorized by said § 34.

Under the provisions of § 34 of G. L. (Ter. Ed.) c. 71, in the form appearing in St. 1939, c. 294, it was mandatory upon the city of Woburn to supply money for the following items for the support of the public schools in accordance with estimates submitted by the school committee in good faith: salaries of the superintendent of schools and of teachers under contract; text books and supplies for instruction on subjects which, under §§ 1 and 4, the committee deemed expedient; janitors and custodians of buildings; telephone, fuel, lights, power, water and other supplies for operation of the school plant; repairs; salaries of school physicians and nurses and health supplies; diplomas, diploma ribbons and graduation speaker; salary of the attendance officer; and clerical assistance in the administrative department; but not for the furnishing of transportation of pupils, which was permissive, and not "required by" c. 71.

FOUR PETITIONS, the first three filed in the Superior Court on October 7, 1940, and the fourth on August 14, 1941.

The cases were heard by *Swift*, J.

*J. Gorrasi*, City Solicitor, for the respondent.

*J. E. Henchey*, (*J. H. McLaughlin* with him,) for the petitioners.

Cox, J. These are four petitions in equity brought by ten or more taxable inhabitants of the respondent city under the provisions of G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294. Demurrers to three of the petitions were overruled by interlocutory decrees, and it was agreed that trial on the merits might proceed without any action on the demurrer in the other case, its final disposition to depend upon the final disposition of the other demurrers. The respondent, however, waived its appeals from these interlocutory decrees in this court.

The several petitions relate to the alleged failure of the respondent in the years 1938 to 1941, inclusive, to provide an amount of money sufficient for the support of the public schools, as required by said c. 71. They were heard by a judge of the Superior Court, who filed a memorandum of findings and rulings, applicable to all cases, and a final decree, favorable to the petitioners, was entered in each

case. The respondent appealed from each final decree. The evidence is reported, together with a statement of agreed facts, submitted "as evidence in place of ordinary proof and [it] is merely a part of the evidence and not a case stated." It is for us to decide the case according to our own judgment giving due weight to the findings of the judge which, based in part upon oral evidence, will not be disturbed unless plainly wrong. *Fuller* v. *Lovell*, 304 Mass. 542, 547.

Statute 1939, c. 294, approved on June 15, 1939, provides as follows: "Every city and town shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter. Upon petition to the superior court, sitting in equity, against a city or town, brought by ten or more taxable inhabitants thereof, or by the mayor of a city, or by the attorney general, alleging that the amount necessary in such city or town for the support of public schools as aforesaid has not been included in the annual budget appropriations for said year, said court may determine the amount of the deficiency, if any, and may order such city and all its officers whose action is necessary to carry out such order, or such town and its treasurer, selectmen and assessors, to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five per cent thereof. When such an order is made prior to the fixing of the annual tax rate the foregoing sums shall be required by such order to be provided by taxation in the manner set forth in section twenty-three of chapter fifty-nine; and when such an order is made after the annual tax rate has been fixed according to law such sums shall be required by such order to be provided by borrowing in the same manner and for the same period of time as is provided under clause (11) of section seven of chapter forty-four in the case of final judgments, subject to all other applicable provisions of chapter forty-four, except that, in the case of a town, such borrowing shall be made by the town treasurer, with the approval of a majority of the selectmen, and no vote of the town shall be required therefor. Said court may order that the sum equal to the deficiency

be appropriated and added to the amounts previously appropriated for the school purposes of such city or town in the year in which such deficiency occurs and may order that the amount in excess of the deficiency be held by such city or town as a separate account, to be applied to meet the appropriation for school purposes in the following year."

The first two petitions relate to alleged deficiencies in appropriations for the years 1938 and 1939, and the question arises whether this statute, which was not approved until June 15, 1939, is applicable to those petitions. The general rule of interpretation that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication, is well recognized, and it is only statutes regulating practice, procedure and evidence, that is, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of actions. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3, and cases cited. *Bernhardt* v. *Atlantic Finance Corp., ante,* 183, 190. Said § 34, prior to the enactment of St. 1939, c. 294, not only created the duty on the part of municipalities, but also provided the remedy for the breach of that duty. *School Committee of Lowell* v. *Mayor of Lowell,* 265 Mass. 353, 357. Said § 34, as now appearing, imposes no new duty upon municipalities, although it is true that the language of its first sentence is not quite the same as it was before amendment. For example, the word "sufficient" is substituted for the word "necessary," but it seems apparent from the use of the word "necessary" in the next sentence that there was no intention of enlarging or modifying the duty that is imposed upon every city and town. The remedy, however, is changed, and apparently to the material advantage of any municipality that violates the duty that is created. The present section discloses a legislative intent to make the remedy more practical and efficient. *Callahan* v. *Woburn,* 306 Mass. 265, 277. The principle that statutes affecting the remedy only are liberally interpreted in order to effectuate their purpose is applicable to one providing

a more effective remedy for the enforcement of a prior right. *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 249.

One question that arises is whether G. L. (Ter. Ed.) c. 71, § 34, inserted by St. 1939, c. 294, seeks to impose other than judicial functions upon the Superior Court. It is not to be assumed that the Legislature intended any such thing. *Selectmen of Milton* v. *Justice of the District Court of East Norfolk*, 286 Mass. 1, 6. See *Driscoll* v. *Mayor of Somerville*, 213 Mass. 493, 494. Said § 34 relates in the first instance to the support of the public schools, "as required by this chapter." Said c. 71, as more fully appears hereinafter, contains provisions relative to what a municipality must do by way of supporting the public schools, and we are of opinion that the question, whether, in a given case, the support that has been furnished is that required by this chapter, presents a judicial question. See *O'Connor* v. *Brockton*, 308 Mass. 34, 37. It does not purport to transfer to the judiciary any question of expediency as to appropriations or to require the court to enter into any consideration of municipal policy of financial administration of a city or town. The court, however, is required to determine whether the requirements of said c. 71 have been met. Judicial questions presented require consideration by this court. *Selectmen of Milton* v. *Justice of the District Court of East Norfolk*, 286 Mass. 1, 6. *Opinion of the Justices*, 251 Mass. 569, 615. *Whalen* v. *First District Court of Eastern Middlesex*, 295 Mass. 305, 308, and cases cited.

The respondent's charter, St. 1897, c. 172, § 28, vests the management and control of the public schools in the school committee. No question is raised as to the status of the petitioners or as to the functioning of the duly elected school committee during the several years in question. The judge found that the committees in each year, seasonably within the law, submitted estimates of the "expenditures" voted by it as necessary for the support of public schools, "as required by Gen. Laws, Ch. 71." These estimates contained amounts necessary to pay the teachers and the superintendent of schools, based upon contracts

in effect at the commencement of each fiscal year. Some of the teachers were on tenure and some on a yearly basis, and the rates of salary were fixed by the school committee. The estimates also included sums necessary to pay the contracts of "janitors, custodian of buildings, clerks in the offices of the School Department, school physician, school nurses, supervisor of attendance," all of whom were under the protection of the civil service law, and three non-civil service employees, also on contracts in effect at the commencement of each of the four years. The estimates also included further sums representing non-salary items such as coal, lights and other supplies. There is a finding as to the subjects taught in the elementary schools, "which under the provisions of General Laws, Ch. 71 shall be taught," and also a finding of the subjects taught in the high school, all of which the school committee voted as "expedient to be taught." No question is raised as to the respondent being required to maintain the high school. There are further findings that the teachers taught throughout the years and were not employed in any other work, and that the schools were not kept longer than the time required by law. (See § 1 of said c. 71.)

The difference between the estimates submitted by the school committee and the amount of appropriation in each year is the amount that the judge found to be the deficiency necessary for the support of the respondent's public schools as required by said c. 71, and the cause given for the deficiency is the failure on the part of the respondent to provide sums sufficient to pay all of the salaries of persons under contract with the city at the commencement of the fiscal years in question and the sums necessary to pay the non-salary items estimated by the school committee at the commencement of each fiscal year. The tax rates in each year were legally fixed before the petitions were brought. The school committee acted in good faith.

The final decree in each case establishes the amount of the deficiency and orders the respondent and all its officers whose action is necessary to carry out the decree, to provide for the borrowing of money to meet the deficiency, together

with a stated sum representing twenty-five per cent of the deficiency, "in accordance with the law applicable thereto." None of the decrees contains any other order as to what shall be done with the money.

The several amounts of estimates, appropriations and the difference between these amounts were agreed upon. The estimates submitted by the school committee in each year consisted of two classifications of items, one for salaries and wages, and the other for non-salary items. In 1938, the budget provided a sum for salaries and wages and a separate sum for other expenses. But in the remaining three years the appropriation for schools was in a lump sum, with no separation into salary and non-salary items. The judge's finding, however, that the cause of the deficiency was a failure on the part of the respondent to provide sums sufficient to pay salaries and the sums necessary to pay for non-salary items, based, as it could be, upon the status of the appropriation in the year when sums were allocated to salary and non-salary items, is sufficient to raise the question whether all the items are required under said c. 71. There was evidence, however, that the non-salary items had been paid out of the total appropriation for the given year, and that the deficiency was allowed to "remain entirely with the teachers' salaries," although there was other evidence that the school employees had not been paid in full.

The respondent contends that it is not enough for the petitioners merely to show that the appropriations made by it were not as large as the estimates of the school committee, and that if it appropriated sufficient money to fulfil the minimum requirements of said c. 71, it has complied with the law.

We are of opinion that said § 34 relates to support that is mandatory, as distinguished from that which is permissive. *Cushing* v. *Newburyport*, 10 Met. 508, 517–519. See *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 88, 89; *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, 358.

The itemized estimate submitted by the school committee for the year 1938 is divided into several groups. It is to be

observed that this is the only year in which the appropria-
tion for schools was in two separate items, as hereinbefore
stated. Under the heading "Instruction" are included sal-
aries of teachers, books, supplies and other expenses. We
think there can be no doubt that the respondent was re-
quired, by the provisions of said § 34, to "provide for the
salaries of teachers . . . as voted by the school committee."
*Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 89. *Callahan*
v. *Woburn*, 306 Mass. 265, 268, 274–275. See *O'Connor* v.
*Brockton*, 308 Mass. 34, 37. No question is raised that the
salaries of the teachers were not established in accordance
with the provisions of said c. 71.

The judge found that the subjects taught were either
those required specifically by said c. 71, or those that the
school committee, by virtue of said chapter, voted as expe-
dient to be taught. (See §§ 1 and 4.) Section 4 of said
chapter provides for the maintenance of high schools by
certain municipalities, of which the respondent was prop-
erly found to be one. This section also provides that in
such schools instruction shall be given in such subjects as
the school committee considers expedient. The mandate
requiring that instruction shall be given in the high school
in such subjects as the school committee considers expedient,
by teachers employed for that purpose, is equally compelling
with the mandate requiring the maintenance of that school.

Section 48 of said c. 71 provides that the school committee
shall, at the expense of the town, purchase textbooks and
other school supplies. This is a mandatory provision, and
the finding was warranted that the estimates were proper
and represented books and supplies that were necessary.
We are of opinion that these items are required by said
c. 71.

The next heading in the estimate in question that was
submitted is entitled "Operation School Plant." It is ap-
parent that a considerable portion of this item refers to the
salaries of janitors and custodians of buildings. The re-
spondent's charter (St. 1897, c. 172, § 30) provides that the
school committee shall elect a superintendent of schools, but
not from among its own members, who shall also be its

secretary, and that said committee may appoint janitors of all school buildings and such subordinate officers and assistants as it may deem necessary for the proper "discharge of its duties and the conduct of its business, shall define their terms of service and fix their compensation, and may remove and discharge them at pleasure." In this connection it is to be observed that by the provisions of § 59 of c. 71, the committee, subject to a provision not here material, "shall" employ a superintendent of schools and fix his compensation. The fact that the charter authorizes the school committee to employ janitors and other officers and assistants is by no means conclusive that it is not authorized to employ them under said c. 71. See *Huse* v. *Lowell*, 10 Allen, 149.

Section 68 of said c. 71, inserted by St. 1934, c. 97, provides, among other things, that every town shall provide and maintain a sufficient number of schoolhouses, properly furnished and conveniently situated for the accommodation of all children therein entitled to attend the public schools, and the school committee, unless the town otherwise directs, shall have general charge and superintendence of the schoolhouses, shall keep them in good order, and shall, at the expense of the town, procure a suitable place for the schools if there is no schoolhouse and provide fuel and all other things necessary for the comfort of the pupils. It is elementary in the law of cities and towns that public officers have only such powers to bind municipalities by contract as are conferred by the express terms or necessary implications of statutes, *Simpson* v. *Marlborough*, 236 Mass. 210, 213, but it is a well established general rule that when a general power is given or duty enjoined, every particular power necessary for the exercise of the one, or the performance of the other, is given by implication. *Attleboro Trust Co.* v. *Commissioner of Corporations & Taxation*, 257 Mass. 43, 52. *Fluet* v. *McCabe*, 299 Mass. 173, 178. We think that the employment of janitors and custodians of school buildings is necessary to the effective exercise of the express duties imposed by said § 68. It seems almost impossible to think of the mandate requiring that schools shall be kept

in good order and that fuel and all other things necessary for the comfort of the pupils shall be provided, without at the same time thinking of the necessary janitor service that is required for these purposes. Furthermore, § 54 of said c. 71, inserted by St. 1938, c. 265, § 1, provides that the school physician, among other things, is required to make such examination of "janitors . . . as in his opinion the protection of the health of the pupils may require." See *O'Connor* v. *Brockton*, 308 Mass. 34, 37. Other items listed under the heading "Operation School Plant" are telephone, fuel, lights, power, water and supplies. We think it apparent that all of these items, except one, clearly come within the purview of § 48 (relating to supplies) and said § 68. The other item, that of telephone, in our opinion also comes within the purview of said § 68.

Under the heading "Plant Maintenance" there are two items: "Repairs" (upkeep) and "Outlay" (seven additional typewriters). Said § 68 expressly provides that the school committee shall keep the schoolhouses in good order, and we are of opinion that the item for repairs is therein comprehended. Section 48 of said c. 71 provides that the school committee, at the expense of the town, shall purchase school supplies. Typewriting is one of the subjects that the committee found it expedient to teach under the provisions of § 4 of said c. 71. We are of opinion that the estimate for typewriters comes within the mandate of said § 48.

The next item is entitled "Transportation," and includes bus tickets for fifty pupils. Said § 68, inserted by St. 1934, c. 97, in addition to the provisions already referred to, provides that, in certain circumstances, if a school committee declines to furnish transportation, the department of education may require the town to furnish it. General Laws (Ter. Ed.) c. 40, § 4, provides that a "town" may make contracts for the furnishing of transportation of school children and also that the contracts for such transportation may be made by the school committee in certain circumstances. As was pointed out in the case of *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, 237, when express authority to make

contracts for transportation was first conferred upon school committees, the new act was not incorporated into said c. 71, but, on the contrary, was inserted in said c. 40 relating to the general powers and duties of cities and towns, as an addition to § 4. It was there said, at page 237: "Contracting for the furnishing of transportation of school children bears only a secondary relation to education. It is a matter which could have been committed to some other board or officer without destroying the symmetry of the established system of school government." We are of opinion that this estimated item for transportation cannot be said to come within the purview of said c. 71 in the sense that it is necessary. We find nothing that warrants the conclusion that the school committee has any mandate, express or implied, to provide transportation, although it may do so.

The next item of estimate is entitled "Health," and includes salaries and supplies. Section 53 of said c. 71 provides that the school committee shall appoint one or more school physicians and nurses, shall assign them to the public schools within its jurisdiction, and shall provide them with all proper facilities for the performance of their duties. (See also §§ 54, 55 and 57 as to mandatory duties imposed upon the school physician and the school committee relative to examinations of children, teachers, janitors and school buildings.) The detailed items under the heading of supplies, for which $50 was asked, consist of bandages, tape, antiseptics, and other materials that seem to be peculiarly adapted to emergency treatment. We are of opinion that the items under this general heading of "Health" are required by said c. 71.

The next item of estimates is entitled "Library," and includes items for salaries and supplies and books. It appears that the school committee deemed it expedient to teach "library science" in the high school (see § 4 of said c. 71) and, by the provisions of said § 4, the city was required to give instruction in this subject. We are of opinion that the salary item under this heading comes within the purview of said § 34 and that the item of $25

for supplies and books comes within the provisions of said § 48.

The next item of estimate is entitled "Miscellaneous," and comprises diplomas, diploma ribbon and graduation speaker. We are of opinion that the item for diplomas and ribbon comes within the scope of said § 48 relative to the purchase of supplies, and that the item for the graduation speaker comes within the broad provisions of § 37 relative to the duties of the school committee. See *Davis* v. *School Committee of Somerville*, 307 Mass. 354, 362.

The remaining item of estimate is entitled "Administration," and consists of salaries and supplies. In an exhibit in the case, the salaries of the superintendent of schools, the attendance officer and two clerks are listed, and these appear to be the salaries comprehended under the heading of "Administration." The agreed facts also refer to the superintendent, supervisor of attendance and "clerks in the offices of the School Department." We think it may be assumed that these clerks were employed during the four years in question, and there seems to be no question but that the superintendent was in office during those years. "It is plain from the provisions of G. L. c. 71, § 59, that the power of the school committee over the salary of the superintendent of schools is the same as over salaries of teachers." *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 89. *O'Connor* v. *Brockton*, 308 Mass. 34, 37. By the provisions of said § 59, a superintendent employed under that section, "shall" be the executive officer of the committee, and, under its general direction, shall have the care and supervision of the schools and shall assist in keeping its records and accounts and in making such reports as are required by law. The question whether clerks in the office of the school department and school nurses stand upon the same footing as school teachers was not considered in the case of *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 89. A related question as to the fixing of the salaries of janitors in excess of available appropriations, "if that should turn out to be the cause of the 'deficiency' here claimed," was referred to in *O'Connor* v. *Brockton*, 308 Mass. 34, 37. In *Callahan* v.

*Woburn*, 306 Mass. 265, 278, it was said that the remedy provided for by the then § 34 of said c. 71, if prosecuted, would make available to the employees of the school department, as well as to the teachers and superintendent of schools, a sum sufficient to pay whatever is due them. We think there is no doubt that the school committee has the authority to employ clerks for necessary purposes. The question, however, is whether it is required to do so. The superintendent of schools is required to assist the committee in keeping its records and accounts and in making such reports as are required by law. Reference to G. L. (Ter. Ed.) c. 72, discloses that a large amount of clerical work is involved in gathering and recording the information that is the basis of returns that must be made in behalf of the school committee to the department of education. The amount of work imposed upon the school committee warranting the employment of clerks obviously must vary with the size of the municipality. We cannot think that the Legislature intended that the clerical work necessarily involved in the administration of the public schools of a city such as Woburn should be done without the aid of clerical assistance. Although the respondent's charter provides that the school committee may appoint such subordinate officers and assistants as it may deem necessary for the proper discharge of its duties and the conduct of its business, shall define their terms of service and fix their compensation, and may remove and discharge them at pleasure (St. 1897, c. 172, § 30), there is no provision in said c. 71 giving the school committee direct authority to employ clerical assistance.

Towns must provide the money necessary for the support of public schools, as required by § 34 of said c. 71. Here it may be observed that the amount of money that must be raised obviously depends upon the size of the municipality and the number of school children. But whatever that size and number may be, the municipality is obligated to provide the necessary money, and if it neglects to do so, it is now subject to a proceeding which still has the aspects of a penalty attached. The Legis-

lature, by its mandate, has placed the school committee in general charge of the public schools, as well as of the schoolhouses. Perhaps it might be said that by reason of the absence from said c. 71 of any direct authority on the part of the school committee to employ clerical assistance, any sums estimated for such assistance are not to be considered in determining whether there is any deficiency. Perhaps it may be contended that although the school committee has a mandate to perform, the manner in which it may be performed and the means to be adopted in performing it not having been specifically provided for, it follows that although the school committee may adopt the necessary means, it is not required to do so. On the other hand, it may be said that where, as here, the committee has, to all intents and purposes, the general supervision and control of public schools and schoolhouses by legislative mandate, it was not intended that the performance of the duty involved in that mandate should depend upon the option of the committee to perform it, but rather, as part of the mandate, that the committee was required to adopt such means as would effectually carry it out. We incline to this latter view, and in our opinion the employment of the clerks comes within the purview of said c. 71 as necessary for the support of the schools. What has been said heretofore applies with equal force to the item of supplies under this heading.

One item remains for consideration. Under the heading "Administration," there is an item for the salary of an attendance officer. No provision for the appointment of such an officer appears in said c. 71, but by the provisions of c. 77, § 12, every school committee shall appoint and fix the compensation of one or more supervisors of attendance and shall make regulations for their government. The duties of such officers are defined in § 13 of said c. 77. In general, they relate to school children, their conduct and their situation. It seems apparent that an attendance officer is an important adjunct to the public school system. See *Huse* v. *Lowell*, 10 Allen, 149. The first law relative to them appears to have been enacted in 1873.

The appointment of such an officer appears to be mandatory. Section 37 of said c. 71 provides that the school committee shall have general charge of all the public schools, and that it may make regulations as to attendance therein. General Laws (Ter. Ed.) c. 76, § 1, as inserted by St. 1939, c. 461, § 3 (see St. 1941, c. 423), entitled "School Attendance," contains provisions for school attendance, which for children of certain ages is mandatory, subject to some specific limitations. By § 1 of said c. 76 the school committee of each town shall provide for and enforce the school attendance of all children actually residing therein "in accordance herewith." It seems apparent that the Legislature intended that a supervisor of attendance should be, to all intents and purposes, an officer connected with the public schools, charged with serious and important duties that have an intimate relation with that duty imposed upon the school committee by § 37 of said c. 71. The Legislature may have thought that, for purposes of convenience, it was advisable to provide for the appointment of such an officer in said c. 77 and to provide for school attendance in c. 76. But we think that chapters 76 and 77 must be read in connection with c. 71, with which they are so intimately related. See *Knapp* v. *Amero*, 298 Mass. 517, 522. Accordingly, we are of opinion that the estimate for the salary of this officer comes within the purview of said c. 71.

In *Callahan* v. *Woburn*, 306 Mass. 265, it was held that G. L. (Ter. Ed.) c. 44, § 31 (the municipal finance act), which provides, so far as material, that no department of any city or town, except Boston, shall incur liability in excess of the appropriation made for the use of such department, did not affect the duty resting upon the school committees to make contracts with the teachers and superintendents of schools. (Page 273.) In that case it was also held that teachers, superintendents and employees of the school department could not maintain an action of contract against the municipality because of the provisions of § 34 of said c. 71, as it then appeared, and that the only way that this court could see to make the two statutes there

under consideration workable was to hold that salaries that had been earned, and that should have been paid, must come from the penalty provided for, when exacted. (See page 277.) We are of opinion that this reasoning also applies to such other necessary items for the support of public schools, as required by said c. 71, for which municipalities are required to raise money by taxation, and that as to contracts for such necessary items or liabilities incurred therefor in excess of appropriations, the provisions of § 31 of said c. 44 do not apply.

The estimates for the years other than 1938 are substantially the same, although the amounts differ to some extent. What has been said applies equally to the situation disclosed in these three other years, and the result is that the amount of the deficiency in each year, as found by the judge, must be changed to some extent.

Section 34 of said c. 71, by its terms, contemplates that the existence of any deficiency does not depend upon expenditures having been made. This is apparent from the language of said section as appearing in St. 1939, c. 294, where it is provided that if a municipality is ordered to provide a sum of money equal to a deficiency prior to the fixing of the annual tax rate, the sums shall be required by such order to be provided by taxation in the manner set forth in § 23 of c. 59, and when such an order is made after the annual tax rate has been fixed according to law, such sums shall be required by such order to be provided by borrowing in the manner provided by said c. 44.

It is apparent that the Legislature intended to entrust the care and operation of the public schools in this Commonwealth to the school committees. See *Batchelder* v. *Salem,* 4 Cush. 599; *Charlestown* v. *Gardner,* 98 Mass. 587, 589, 590; *McKenna* v. *Kimball,* 145 Mass. 555; *Whittaker* v. *Salem,* 216 Mass. 483; *Leonard* v. *School Committee of Springfield,* 241 Mass. 325, 328–330; *Antell* v. *Stokes,* 287 Mass. 103, 105–106; *Davis* v. *School Committee of Somerville,* 307 Mass. 354, 362. This intent is gathered from an examination of statutes covering a period from the very beginning of the Commonwealth down to the present time.

The legislative intent is also apparent that the municipalities must provide the money that is necessary for the support of public schools. It is to be assumed that the school committees acted in good faith and that in submitting their estimates they were mindful of the law.

It follows from what has been said that it was error to include in the amounts of the deficiencies the several items for transportation and also that the elimination of these items requires a new computation of the twenty-five per cent of the several deficiencies.

The final decrees, modified in accordance with this opinion, are affirmed.

*Ordered accordingly.*