PHILIP A. PIRRONE & others *vs.* CITY OF BOSTON & others.

Suffolk.    October 3, 1973. — December 17, 1973.

Present:    TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Equity Jurisdiction,* Support of public schools. *Boston. School and School Committee. Statute,* Construction.

A failure of the Boston city auditor properly to determine under St. 1936, c. 224, §§ 2, 2B, an amount to be certified to the school committee as available for direct appropriation by it cannot be remedied by a suit in equity against the auditor under G. L. c. 71, § 34. [405-408]

A suit in equity under G. L. c. 71, § 34, does not lie against the city of Boston. [409-413]

In construing statutes, absent a clearly expressed legislative intent to the contrary, a special act must prevail over a conflicting general act. [413]

BILL IN EQUITY filed in the Superior Court on January 17, 1972.

The suit was heard by *Brogna,* J., on demurrer.

*John F. McMahon* for the plaintiffs.

*Thomas H. Martin,* Assistant Corporation Counsel (*Herbert P. Gleason,* Corporation Counsel, with him) for the city of Boston & others.

TAURO, C.J.    The plaintiffs appeal from an interlocutory decree sustaining the defendants' demurrer and from a final decree dismissing their bill.

The plaintiffs are eleven taxable inhabitants of the city of Boston. Pursuant to G. L. c. 71, § 34, as appearing in St. 1939, c. 294,[1] they sought in the Superior Court a determination that the annual budget appropriations of the city of Boston for the fiscal years 1970 and 1971 did not include the amounts "necessary . . . for the support of . . . [Boston's] public schools." Central to the reasons for the demurrer is the argument that school expenditures in Boston are controlled by statutes other than G. L. c. 71, § 34, and that therefore a bill under this statute does not lie.

The plaintiffs' bill contains four counts,[2] each count purportedly stating a separate ground for relief under § 34 of c. 71. The first count alleges a deficiency in the funds appropriated in the fiscal years 1970 and 1971 for the Boston schools in that no sufficient amount was appropriated to

---

[1] In relevant part, § 34 reads as follows: "Every city and town shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter. Upon petition to the superior court, sitting in equity, against a city or town, brought by ten or more taxable inhabitants thereof, or by the mayor of a city, or by the attorney general, alleging that the amount necessary in such city or town for the support of public schools as aforesaid has not been included in the annual budget appropriations for said year, said court may determine the amount of the deficiency, if any, and may order such city and all its officers whose action is necessary to carry out such order, or such town and its treasurer, selectmen and assessors, to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five per cent thereof. When such an order is made prior to the fixing of the annual tax rate the foregoing sums shall be required by such order to be provided by taxation . . . and when such an order is made after the annual tax rate has been fixed according to law such sums shall be required by such order to be provided by borrowing."

[2] We have adopted the plaintiffs' description of their various claims in this equity matter as "counts."

fund the provisions of certain collective bargaining agreements between the school committee and the Boston Teachers Union. Counts 2, 3 and 4 all relate to the duty (St. 1936, c. 224) of the defendant auditor of the city of Boston (city auditor) to certify to the school committee the amount of funds available for the committee's direct appropriation, each count alleging a separate defect in the auditor's certifications for the fiscal years 1970 and 1971. For purposes of this appeal, counts 2, 3 and 4 raise a single issue of law and shall therefore be considered together.

The defendants' demurrer sets forth three grounds. The first, addressed to all four counts of the bill, is "[t]hat the plaintiffs have not stated in their bill such a cause as entitles them to any relief in equity . . .." The two other grounds are that certain specified paragraphs in counts 2, 3 and 4 of the plaintiffs' bill are "vague, indefinite and inadequate" and are "argumentative, state conclusions of law, and do not sufficiently or specifically set forth facts." As will be clear, there is no need for us to consider these latter two grounds set up by the demurrer. We therefore treat this as a general demurrer, addressed to the bill as a whole on the ground of want of equity. See *Baker* v. *Paeff,* 318 Mass. 366 (1945). The decrees sustaining the demurrer may be upheld only if the plaintiffs' bill fails to set out any cause of suit under G. L. c. 71, § 34.[3] *O'Connor* v. *Brockton,* 308 Mass. 34, 36 (1941). We conclude that it does not and that the demurrer was properly sustained.

We now review the pertinent statutory and case law background. The system for financing the public schools of the city of Boston is a product of "a long series of acts" which constitute "a comprehensive statutory system applicable to school finances in Boston." *Collins* v. *Boston,* 338 Mass. 704, 708 (1959). The keystone of that statutory scheme is

---

[3] The plaintiffs in their bill and in their brief rely on "the original and statutory jurisdiction" of the Superior Court as a jurisdictional ground separate from and in addition to G. L. c. 71, § 34. We believe, however, that the statute provides the only possible basis for a bill such as the present one; thus, we consider no other theories for maintaining this suit.

St. 1936, c. 224, which has many times been amended.[4] In brief outline, the pertinent sections of the statute empower the school committee of the city of Boston (school committee), by itself, to make appropriations for "school purposes" to be raised by taxation. § 2, as amended. Such appropriations are to be made pursuant to a four-fifths vote, and by the same majority the school committee may override any mayoral veto of the amounts thus appropriated. § 3, as amended. The school committee certifies the appropriations it has made to the board of assessors, who must include them in the annual levy. § 3, as amended. The amount which may be appropriated directly by the school committee is not unlimited, however. Such amount may not exceed a dollar figure which is determined according to a statutory formula[5] and certified to the school committee by the city auditor. § 2B. Any funds in excess of that maximum would have to be appropriated by the city council with the mayor's approval. § 2.[6]

This school financing system in Boston is unique in the Commonwealth. The usual practice outside of Boston is for the local school committee, which has no appropriation power, to determine the annual school budget and then to request the necessary appropriation from the city council or town meeting. See *Casey* v. *Everett,* 330 Mass. 220, 223 (1953). The Legislature has required that every city and town must provide the funds necessary for the support of local schools, and has authorized the device of the ten taxpayer

---

[4]The sections pertinent to this suit are: § 2, as amended by St. 1948, c. 167, § 1; St. 1949, c. 117, §§ 1, 2; St. 1963, c. 786, §§ 1, 2; St. 1966, c. 642, § 13; and St. 1970, c. 583; § 2A, inserted by St. 1948, c. 334, § 1, and amended by St. 1951, c. 411, § 2; St. 1951, c. 468, § 15; St. 1952, c. 247, § 2, and St. 1952, c. 316, § 2; § 2B, inserted by St. 1963, c. 786, § 3; and § 3, as amended by St. 1945, c. 513.

[5]The formula requires that the sum of estimated school income for the current year plus unexpended appropriations from the previous year be subtracted from the sum of the previous year's total appropriations for school purposes, including those made by the school committee and by the city council with the mayor's approval, plus an amount equal to twice the amount expended for salary increases during the final four months of the previous year. C. 224, § 2B.

[6]The precise wording of the statute on this point is: "Nothing in this section shall prevent the mayor, on request of the school committee, from recommending and the city council from passing additional appropriations for school purposes."

suit as a means of enforcing that requirement. G. L. c. 71, § 34. This court has consistently interpreted § 34 as permit- ting no discretion to the local appropriating authority to reduce the total amount of funds which has been determined by the school committee to be necessary for school purposes. See, e.g., *Casey* v. *Everett, supra,* and cases cited. In other words, the city council or town meeting must appropriate the full amount requested by the school committee (at least to the extent such funds are "necessary" for c. 71 purposes); if it fails to do so, a ten taxpayer bill may properly be brought and the court will require that the difference between the amount requested and the amount appropriated (plus a twenty-five per cent add-on) be made up, either by further appropriation or by borrowing. *Ring* v. *Woburn,* 311 Mass. 679 (1942).[7] No case involving the city of Boston, however, has ever been decided on a ten taxpayer bill under G. L. c. 71, § 34. Thus, this court has never addressed the question whether the unique division of responsibilities in the Boston school financing system may be reconciled with the mandate of school committee supremacy implicit in § 34.[8]

We first hold that the demurrer was properly sustained as to counts 2, 3 and 4 of the bill. The substance of those counts is that, for the years in question, the city auditor failed prop- erly to determine the amounts to be certified to the school committee pursuant to c. 244, §§ 2, 2B. The plaintiffs at- tempt to bring these allegations within the scope of G. L. c. 71, § 34, by contending that the amounts as determined by the city auditor were less than they would have been had he fully complied with the statute, and that therefore there was a "deficiency" in the amount available for appropriation by the school committee in each year.

---

[7]An exception to this operation of § 34 has been recognized where the voters of a municipality, pursuant to a charter provision, have by referendum vote rejected a school budget appropriation. A ten taxpayer bill brought under G. L. c. 71, § 34, will not lie to reinstate the disapproved budget. See *Gorman* v. *Peabody,* 312 Mass. 560 (1942).

[8]On at least two recent occasions we have adverted to, but declined to decide, this issue. *Kerrigan* v. *Boston,* 361 Mass. 24, 33 (1972). *School Comm. of Boston* v. *Finance Commn. of Boston, ante,* 187, 190-191 (1973).

The remedy provided by § 34 is explicitly directed at deficiencies in amounts actually appropriated for school purposes. Because in Boston it is the school committee which actually appropriates the certified amount, it would appear that the proper defendant under § 34 as to counts 2, 3 and 4 would have to be the school committee, not the city auditor. In addition, as discussed above, the traditional application of § 34 has been in situations where a local school committee has determined the "necessary" amount of funds and the local appropriating authority has failed to provide that amount, so that the determination of the "deficiency" by a court is merely a matter of subtraction. Quite clearly § 34 has no application to the certification made by the Boston city auditor under St. 1936, c. 224, since that certification involves neither a determination of necessary funds by a school committee nor an appropriation of funds by an appropriating authority. The ten taxpayer bill was not intended as a general remedy for the failure of public officials correctly to perform ministerial duties. If the city auditor has failed to perform his statutory duties, the proper remedy is a petition for a writ of mandamus brought by the school committee.[9] Even assuming that the G. L. c. 71, § 34 remedy is applicable to the city of Boston (see discussion below), no cause of suit under that statute was made out by counts 2, 3 and 4 of the plaintiffs' bill.

---

[9]Mandamus would be the proper remedy even though the usual rule is that "[m]andamus is not an appropriate remedy to obtain a review of the decision of public officers who have acted and to command them to act in a new and different manner." *Harding* v. *Commissioner of Ins.* 352 Mass. 478, 480 (1967). That rule has invariably been applied where the decision to be reviewed is one involving discretion or judgment. See, e.g., *Harding* v. *Commissioner of Ins., supra; Howe* v. *Attorney Gen.* 325 Mass. 268 (1950); *Leigh* v. *Commissioner of Pub. Health & Charities of Lawrence,* 310 Mass. 343 (1941). No discretion or judgment is required of the city auditor in performing the arithmetic required by St. 1936, c. 224. In addition, we have stated that the usual rule "may be subject to qualification" (*Rines* v. *Justices of the Superior Court,* 330 Mass. 368, 373 [1953]). It has been so qualified in several cases, most of which involve the use of mandamus to review the action taken by local officials in counting votes cast in local elections. See, e.g., *Flanders* v. *Roberts,* 182 Mass. 524 (1903); *DePetrillo* v. *Registrars of Voters of Rehoboth,* 342 Mass. 13 (1961). See also *Attorney Gen.* v. *Suffolk County Apportionment Commrs.* 224 Mass. 598 (1916). These cases provide support by analogy for the use of mandamus to remedy the city auditor's incorrect arithmetic.

We now turn to a consideration of the first count of the plaintiffs' bill. The defendants have argued that their demurrer to this count was properly sustained on either of two grounds: the remedy of the ten taxpayer bill provided by G. L. c. 71, § 34, has no application in the city of Boston and, even if it is applicable, the plaintiffs' bill is insufficient in that it fails to allege any request for funds by the school committee. Because we decide that a bill under § 34 will not lie against the city of Boston, we need not discuss the sufficiency of the plaintiffs' allegations.

The plaintiffs forcefully contend that the city of Boston is subject to the same duty to support public schools as is every other Massachusetts city and town. We have no doubt that this is so. But the issue before us is not whether Boston must support public schools. Indeed, it is not even a question of how much support those schools are to receive. Rather, it is a question of who is to determine how much support the schools are to receive. For the cities and towns of Massachusetts other than Boston "[i]t is apparent that the Legislature intended to entrust the care and operation of the public schools . . . to the school committees." *Ring* v. *Woburn,* 311 Mass. 679, 694 (1942). The ten taxpayer bill of § 34 is the means by which absolute school committee discretion as to budgetary decision is ensured. As to Boston, however, the Legislature has evidenced a somewhat different intent as to the amount of budgetary discretion to be vested in the school committee.

The school committee is empowered to appropriate funds for school purposes up to a certain limit. That limit is, essentially, an amount equal to the amount of funds which was required to finance the school system in the preceding year, plus an additional amount to provide for salary increases which became effective during the preceding year. If the school committee determines that additional funds are necessary, it must resort to the usual municipal finance system and request an appropriation by the city council subject to the mayor's absolute veto. St. 1909, c. 486, § 3. This scheme appears to us to represent a reasoned attempt by the Legis-

lature to strike a balance, peculiar to Boston, between the legitimate needs of the city's schools and the equally legitimate limitations on the city's financial resources. By permitting the school committee directly to appropriate a limited amount of funds the Legislature has attempted to ensure that the schools will have at least a minimum of financial support (as evidenced by past requirements). At the same time, by requiring that additional funds be appropriated through the normal channels of municipal finance, the Legislature has attempted to ensure that the officials who are ultimately responsible for the city's financial condition may exercise some control over the extent to which the city's resources are to be appropriated for school purposes. We do not believe that the G. L. c. 71, § 34, remedy can be injected into the Boston school financing scheme without destroying this unique balance of responsibilities between the school committee on the one hand and the mayor and city council on the other. If a ten taxpayer bill will lie against the city of Boston then the statutory limitation on the amount available for direct appropriation by the school committee would be of no practical effect, since the mayor and city council could be forced to honor any school committee requests for funds in excess of that limitation. We believe that the Legislature could not have intended such a result when it created the detailed limitation on the amount available for the school committee's direct appropriation.[10]

The plaintiffs argue that the § 34 remedy must be available in Boston as the only means by which the city's duty to provide the support of public schools required by c. 71 may be enforced. It seems clear that the various duties imposed on

[10]The plaintiffs contend that the provisions of St. 1936, c. 224, and amendments thereto, should be viewed not as a limitation on the school committee but rather as a limitation on the mayor and city council by taking the amount subject to school committee appropriation "out of the arena of political controversy." But, in Massachusetts school financing systems, school committee superiority is the norm; the local appropriating body has little or no control over the amounts appropriated for school purposes. In this context it would appear that any limitation of authority intended by the special acts would have to be of the usual school committee authority, since the mayor and city council typically have no school budgetary authority worth limiting.

school committees generally by that chapter also apply to the school committee of Boston. But § 34 is not a device for ensuring that school committees will perform the duties required of them by c. 71. It is instead a device to ensure that sufficient funds, as determined by the school committee, will be made available to fulfil those duties. In Boston, the Legislature has ensured that the school committee will have operating funds to fulfil its c. 71 responsibilities by empowering it to make its own appropriations up to the statutorily determined maximum. The Legislature merely has determined that in carrying out the duties imposed on it by c. 71, the Boston school committee is not to have quite so much budgetary discretion as do the other school committees. It is certainly neither impermissible nor unusual for the Legislature to impose responsibilities on public officials who do not have complete authority to decide how much money will be provided them in order to fulfil those responsibilities.

Finally, our conclusion that the Legislature could not have intended that the § 34 remedy be applicable to Boston is supported by a consideration of the historical development of the special statutes concerning the financing of the Boston schools. This development began in 1898, when by special act the Legislature empowered the school committee to make appropriations for school purposes not in excess of certain specified dollar amounts per thousand dollars of assessed valuation. St. 1898, c. 400. No provision was made for any appropriation in excess of those limitations. Thus, regardless of how much money the school committee decided was necessary to support Boston's schools, there could be no appropriation in excess of what was authorized by the statute. The only recourse for the city and the school committee was to return to the Legislature and request increases in the statutory limits.[11] While the Boston school committee was

_____

[11]Such requests were often granted. See St. 1901, c. 448; St. 1903, c. 170; St. 1906, c. 205; St. 1909, c. 388; St. 1911, c. 708; St. 1913, c. 615; Sp. St. 1915, c. 300; Sp. St. 1915, c. 372; Sp. St. 1916, c. 267; Sp. St. 1919, c. 206; Sp. St. 1919, c. 249; St. 1920, c. 524; St. 1923, c. 488; St. 1925, c. 309; St. 1925, c. 327; St. 1926, c. 153; St. 1926, c. 314; St. 1928, c. 382; St. 1929, c. 256; St. 1930, c. 283; St. 1931, c. 155; St. 1935, c. 284.

thus limited, however, it was quite clear that, in cities and towns other than Boston, the principle of local school committee budgetary autonomy prevailed, even as it does today. In other words, cities and towns other than Boston were required by G. L. c. 71 § 34, to appropriate all the funds requested by their school committees for necessary school purposes.[12] See *Decatur* v. *Auditor of Peabody,* 251 Mass. 82, 88-89 (1925); *School Comm. of Lowell* v. *Mayor of Lowell,* 265 Mass. 353, 355-356 (1928). Thus, there can be no doubt that the Legislature, in enacting St. 1898, c. 400, intended that the Boston school committee should have less budgetary autonomy than school committees in other Massachusetts cities and towns. It is equally clear that, after 1898, G. L. c. 71, § 34, could have no application whatsoever in Boston as long as the Legislature, rather then the city government, set the limit on the amount of funds which could be appropriated for school purposes.

In 1936 the Legislature revamped the unique Boston school financing scheme by substituting fixed dollar limitations for certain of the limitations which had been based on the city's valuation. In addition, for the first time it provided: "Nothing in this section shall prevent the mayor, on request of the school committee, from recommending and the city council from passing additional appropriations for school purposes." St. 1936, c. 224, § 2.

In light of the pre-1936 provisions, the most rational interpretation of this amendment is that the Legislature intended to enable the city to appropriate funds for school purposes above the statutory limits without having to request new legislation to do so. There is no indication in the 1936 amendment, however, that the Legislature intended to remove the restrictions on the school committee's appropriation power which had existed since 1898. Instead of having

---

[12]Although the remedy of the ten taxpayer bill was not added to G. L. c. 71, § 34, until 1939 (St. 1939, c. 294), the duty imposed by that section has existed since 1647. *Callahan* v. *Woburn,* 306 Mass. 265, 276 (1940). The pre-1939 versions of the statute typically provided monetary penalties for a city's failure to comply with its requirements. The 1939 amendment "discloses a legislative intent to make the remedy more practical and efficient." *Ring* v. *Woburn,* 311 Mass. 679, 682 (1942).

to go to the Legislature for appropriations in excess of the statutory limits, the school committee could now go to the mayor and city council. But the mayor and city council could no more be forced to honor requests for further appropriations than prior to 1936 the Legislature could be forced to honor such requests. To hold otherwise would require us to find in the single sentence quoted above a legislative intent to scrap the Boston school financing scheme which had been created in 1898 and once again to vest in the Boston school committee the same budgetary autonomy enjoyed by every other school committee in Massachusetts. The language of the 1936 amendment bears no such interpretation.

For the foregoing reasons we have determined that the remedy provided by G. L. c. 71, § 34, is incompatible with the provisions of St. 1936, c. 224, as amended. We have often reiterated "our well established principle of construction" that, absent a clearly expressed legislative intent to the contrary a special act "made in regard to a place, growing out of its peculiar wants, condition, and circumstances," must prevail over a conflicting general act. *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 698 (1971). We therefore hold that a ten taxpayer bill pursuant to § 34 will not lie against the city of Boston.[13]

*Decrees affirmed.*

---

[13]The plaintiffs contend that this construction of the statutes constitutes a denial of equal protection in that it deprives Boston taxpayers of a remedy available to all other Massachusetts taxpayers. But there need be a remedy only where there is an enforceable duty, and the import of our decision is that the duty which the G. L. c. 71, § 34, bill is designed to enforce has not been imposed in Boston. It was reasonable for the Legislature to decide that school financing in Boston should be accomplished in a manner different from that used elsewhere. There is no constitutional requirement that municipal governments must be structured according to a uniform pattern. *Paquette* v. *Fall River,* 278 Mass. 172, 176 (1932). *Begley* v. *Board of Appeal of Boston,* 349 Mass. 458, 459-460 (1965).