EDWIN F. LEONARD & others *vs.* SCHOOL COMMITTEE OF THE CITY OF SPRINGFIELD & others.

Hampden.    September 22, 1921. — May 15, 1922.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*School and School Committee. Springfield. Municipal Corporations,* Budget, Officers and agents. *Statute,* Revision, Construction, Repeal. *Equity Jurisdiction,* Suit by ten taxable inhabitants under G. L. c. 40, § 53. *Equity Pleading and Practice,* Costs, Counsel fees.

The slight verbal changes made in the respective pre-existing statutes by the revision contained in G. L. c. 44, § 32, relating to municipal finances, and in G. L. c. 71, §§ 37, 38, relating to schools and school committees, wrought no alteration in meaning and did not modify the pre-existing law.

The policy of the Commonwealth from early times has been to establish a board elected directly by the people separate from other governing boards of the several municipalities and to place the control of the public schools within the jurisdiction of that body unhampered as to details of administration and not subject to review by any other board or tribunal as to acts performed in good faith.

Statement by RUGG, C.J., of the general powers of school committees in relation to the powers of the municipal officers controlling appropriations.

The interpretation by this court in numerous decisions of the powers of school committees must be presumed to have been adopted by the General Court in enacting the budget law, now G. L. c. 44, § 32, and that law must be construed and applied in the light of that legal history and with reference to that background of school law.

While by St. 1913, c. 719, relating to municipal indebtedness, with its budget provisions, general and special laws inconsistent therewith were repealed, with certain exceptions, nevertheless that act cannot be construed as reaching outside its proper territory over into the well recognized field of public school education equally well established and retained as a separate statutory domain, and as obliterating the functions of the school committee in important particulars.

The charter of the city of Springfield, St. 1852, c. 94; G. L. c. 71, relating to school committees, and G. L. c. 44, relating to municipal finances and budgets, interpreted as an harmonious body of laws in the light of our history and traditions as to the public school system, confer upon the school committee of Springfield power to establish the salaries of teachers within the total amounts appropriated by the budget for public schools according to their best judgment of public needs without being restricted in this regard to particular items specified in the budget; and that committee has power, in order to provide for increases in salaries of teachers determined upon by them but not intended by the mayor to be included in the budget, to eliminate certain other items specifically included in the budget appropriated for school purposes and to use for salary of teachers the amounts specified in the items so eliminated.

In a suit in equity under G. L. c. 40, § 53, by ten taxable inhabitants of a city to restrain the members of its school committee from eliminating certain items from the budget appropriated for school purposes and from using the amounts included in the items so eliminated for the purpose of increasing salaries of teachers, a motion by the school committee for fees of its solicitor to be taxed as costs was denied; and the bill was dismissed without costs.

BILL IN EQUITY under G. L. c. 40, § 53, filed in the Supreme Judicial Court on June 21, 1921, by nineteen taxable inhabitants of the city of Springfield, seeking an injunction restraining the school committee from diverting money of the city from particular school purposes to which it was appropriated in the budget of 1921, as adopted by the city council, and devoting it to other school purposes included within general headings of the budget.

The material facts were agreed to and are described in the opinion. The suit was reserved by *Pierce,* J., for determination by the full court upon the pleadings and an agreed statement of facts.

*J. Dearborn,* (*A. C. Fairbanks* with him,) for the plaintiffs.

*E. H. Brewster,* (*W. V. James* with him,) for the defendants.

RUGG, C. J. This is a suit in equity by the mayor and more than ten other taxpayers of the city of Springfield against the school committee, auditor and treasurer of that city. The object of the suit is to restrain the school committee from diverting money of the city from particular school purposes to which it was appropriated in the budget of 1921, as adopted by the city council, and devoting it to other school purposes included within general headings of the budget.

The relevant facts are that, in response to request by the mayor of Springfield, the school committee seasonably submitted estimates for expenses of the public schools, which, amongst numerous other matters, included an increase in the compensa-

tion to be paid many teachers, as well as salaries of additional teachers. The mayor in his budget as transmitted to the city council named a sum smaller than that asked by the school committee, intending to include salaries of additional teachers at the rate previously fixed by the school committee but intending not to make provision for increases in salaries beyond those arising under general rules established by the school committee. The estimate transmitted by the school committee to the mayor and the budget submitted by the mayor to the city council were arranged under fifteen main headings, so far as the present controversy is concerned. The city council failing to approve or disapprove any items in the budget within sixty days, it became operative as the city's budget under the law. Thereafter the school committee, in order to provide money for the increases in salaries upon which they had determined and for which they had asked, but which the mayor had refused to include in the budget, voted to eliminate "summer schools," which was one heading or item in the budget, to discontinue ten out of a larger number of kindergarten schools thereby diminishing by several thousand dollars the amount required to maintain "kindergartens," another separate heading or item in the budget, and to curtail expenses in other schools constituting distinct headings or items in the budget. The result of the several votes of the school committee was not to exceed the total appropriation for schools but to change the application of some of the items in the budget.

The precise question to be decided is whether the school committee has power thus to carry out its policy as to the management of the school system or whether it is bound by the action of the mayor and city council to the items set forth in the budget without power to modify or change them in any substantial particular. That question concerns the relative powers and duties of the mayor and city council on the one side and of the school committee on the other side under the provisions of law relative to the budget as applied to the administration of the public school system. The governing statutes are G. L. c. 44, relating to "Municipal Finance," G. L. c. 71, relating to "Public Schools," and the city charter of Springfield concerning the school committee. The crucial provision of G. L. c. 44, is § 32, which, omitting its exceptions and quoting only parts pertinent to the form

of city government established by the charter of Springfield, is in these words: "Within sixty days after the annual organization of the city government . . . the mayor . . . shall submit to the city council the annual budget of the current expenses of the city. . . . The budget shall consist of an itemized and detailed statement of the money required, and the city council, by a majority vote, shall make such appropriations in detail, clearly specifying the amount to be expended for each particular purpose; but the budget shall not be in such detail as to fix specific salaries of employees under the direction of boards elected by the people, other than the city council. The city council may reduce or reject any item, but, without the approval of the mayor . . . shall not increase any item in or the total of a budget, nor add any item thereto. . . . the city officials, when so requested by the mayor, shall submit to him forthwith in such detail as he may require estimates for the next fiscal year of the expenditures of their departments or offices under their charge, which shall be transmitted to the city council. . . . if the council fails to approve or disapprove any item in the budget, as submitted by the mayor . . . within sixty days after its receipt thereof, such item shall, without any council action, become a part of the budget for the year, and the sum named shall be available for the purpose designated. . . ."

The charter of the city of Springfield provides that the "school committee shall have the care and superintendence of the public schools, and shall have all the powers, and perform all the duties, of town school committees." St. 1852, c. 94, § 11.

The school committees of cities and towns as enacted by G. L. c. 71, § 37, "shall have the general charge of all the public schools" and, by § 38, "shall elect and contract with the teachers of the public schools."

The slight verbal changes made in these sections of the General Laws, as compared with corresponding sections of earlier statutes, wrought no alteration in meaning and did not modify the preexisting law. *Main* v. *County of Plymouth,* 223 Mass. 66, 69. *Commonwealth* v. *Kozlowsky,* 238 Mass. 379, 387.

It was said in 1846 by Chief Justice Shaw in *Cushing* v. *Newburyport,* 10 Met. 508, at page 511: "The establishment of schools for the education, to some extent at least, of all the children of

the whole people, is not the result of any recent enactment; it is not the growth even of our present constitutional government, or the provincial government which preceded it, but extends back two hundred years, to the early settlement of the colony. Indeed, the establishment of popular schools is understood to have been one of the objects for which powers were conferred on certain associations of persons living together in townships, enabling them to regulate and manage certain prudential concerns in which they had a common interest." The policy of the Commonwealth from early times has been to establish a board elected directly by the people separate from other governing boards of the several municipalities and to place the control of the public schools within the jurisdiction of that body unhampered as to details of administration and not subject to review by any other board or tribunal as to acts performed in good faith.

The general statutory provisions as to the powers of the school committee, to which reference has been made, have been in substance the same for many years. They had been interpreted by numerous decisions and had acquired a well settled meaning long before the enactment of the law providing for a budget. Without reviewing these decisions one by one, it is enough to state summarily their essential conclusions.

The school committee is an independent body, entrusted by law with broad powers, important duties and large discretion. The obligation to select and to contract with teachers implies examination as to their fitness and of necessity carries with it the authority to fix the compensation to be paid. It would be vain to impose upon the school committee responsibility for excellence of the instruction to be afforded to pupils and to deprive them of the power to determine the salaries of teachers. There is much of self sacrifice and devotion to the common welfare among teachers in the public schools. But, nevertheless, the character of service to be obtained depends to a considerable degree upon the compensation offered. The full and appropriate discharge of their duties by school committees requires ample power to select competent teachers. The Legislature, moved by obvious and strong reasons, has vested the school committee with the absolute and unconditional power to agree with teachers upon their salaries to the end that high standards may be secured and

maintained in the education of the youth of the Commonwealth. In the exercise of their honest judgment on the question of salaries for teachers, the school committee are not restricted to the amounts appropriated. For the time during which schools must be kept by law the municipalities must pay such salaries as may be fixed by the school committee. To take this power from the school committee would break up the long established system of our law in regard to public schools. The only supervision which the city council or towns can exercise over the school committee is to vote to close the schools after they have been kept the length of time specified by the law. The school committee may make all reasonable rules and regulations for the government, discipline and management of the schools under their charge. This includes a determination within the bounds set by the statutes of the subjects to be taught and the nature of the schools to be maintained and the exercise of discrimination, insight and wisdom in the election of teachers and in the general supervision of the school system, with all the incidental powers essential to the discharge of their main functions. *Batchelder* v. *Salem*, 4 Cush. 599. *Spiller* v. *Woburn*, 12 Allen, 127. *Charlestown* v. *Gardner*, 98 Mass. 587. *Kimball* v. *Salem*, 111 Mass. 87. *Mc-Kenna* v. *Kimball*, 145 Mass. 555. *Morrison* v. *Lawrence*, 181 Mass. 127. *Morse* v. *Ashley*, 193 Mass. 294. *Hammond* v. *Hyde Park*, 195 Mass. 29. *Barnard* v. *Shelburne*, 216 Mass. 19. *Whittaker* v. *Salem*, 216 Mass. 483. See *Day* v. *Greenfield*, 234 Mass. 31.

The statutory provisions under which these decisions were rendered have been substantially the same for a long time. They have been re-enacted without change in successive revisions of the laws. The interpretation of their terms in the numerous decisions which have been cited may be presumed to have been adopted by the General Court. *Welch* v. *Boston*, 211 Mass. 178, 185. *King* v. *Thissell*, 222 Mass. 140, 141.

This body of statutory and common law regarding a matter of universal interest and profound importance to the public weal was established and widely known before the budget law came into existence. The budget law must be construed and applied in the light of this history and with reference to this background of school law. The budget law, now G. L. c. 44, § 32, already

quoted, was enacted first by St. 1913, c. 719. It was entitled "An Act Relative to Municipal Indebtedness." It was founded upon a report of a joint special committee of the General Court on municipal finance. The joint order of 1912 providing for that committee authorized an investigation of municipal indebtedness and assessment and collection of taxes and kindred matters. The report of that committee is comprehensive concerning the subject of municipal assessment and collection of taxes, and the incurring and paying of municipal indebtedness and allied subjects. There is nothing in it directly touching the public school system. Its words convey no express intimation of a purpose to effect any change in the powers of the school committee. If there is modification, it flows wholly from implication.

The municipal indebtedness act of 1913, with its provisions for a budget, was highly important legislation. It was an innovation in the fiscal affairs of cities governed by a mayor and city council. It was calculated to cultivate municipal thrift and to discourage current expenditures at the cost of future taxation. The payment of present charges out of the present tax levy is one obvious purpose of the act. Another manifest design was "to set rigid barriers against expenditures in excess of appropriations, to prevent the borrowing of money for current expenses, to confine the making of long time loans strictly to raising money for permanent improvements, and in general to put cities upon a sound financial basis so far as these ends can be achieved by legislation." *Flood v. Hodges*, 231 Mass. 252, 256. *Shannon v. Cambridge*, 231 Mass. 322. While by the municipal indebtedness act with its budget provisions general and special laws inconsistent therewith are repealed with exceptions not here material, yet it cannot be construed as reaching outside its proper territory over into the well recognized field of public school education equally established and retained as a separate statutory domain, and obliterating the functions of the school committee in important particulars. There are combined in the General Laws the pre-existing provisions respecting public schools and the budget system of municipal finance, both substantially in the phrases theretofore employed in the statutes. This demonstrates that there was no thought in the minds of the framers of that compilation of laws, or of the legislators in enacting it, that there was conflict between the

two or that they could not stand together as practically workable statutes. To support the contention of the plaintiffs would put the school committee, hitherto at least for almost a century an independent body charged with duties vital to the welfare of society, wholly under the domination of the mayor and city council in essential particulars. As matter of statutory construction, such a revolution in the management of the public school system cannot be effected merely by doubtful implication from a statute enacted to accomplish a quite different end. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 374.

It is to be noted that no question here is raised as to an attempt by a school committee to spend more than a total appropriation made for the support of the public schools. The school committee only assert a right to fix the salaries of teachers in conformity to their own sound discretion without being restricted in this regard to particular items specified in the budget. That contention is sound. The statutes, interpreted as an harmonious body of laws in the light of our history and traditions as to the public school system, confer upon the school committee of Springfield power to establish the salaries of teachers within the total amounts appropriated by the budget, according to their best judgment of public needs, as set forth in G. L. c. 71, and other laws governing the conduct of the public schools.

The case at bar is distinguishable in its controlling statutory provisions from *School Committee* v. *Mayor of Cambridge*, 233 Mass. 6, and *Simpson* v. *Marlborough*, 236 Mass. 210.

The request of the school committee for fees of its solicitor to be taxed as costs against the plaintiffs is denied. This is not an appropriate case under our practice for the application of that principle. *Higginson* v. *Fall River*, 226 Mass. 423. Ten taxpayers frequently invoke the aid of the court under G. L. c. 40, § 53, purely for the public welfare and not to enforce a private interest. Even taxable costs often have not been charged against defeated plaintiffs under that statute. *Fuller* v. *Mayor of Medford*, 224 Mass. 176. *Lee* v. *Lynn*, 223 Mass. 109. See in this connection *Burrage* v. *County of Bristol*, 210 Mass. 299; *Sears* v. *Nahant*, 215 Mass. 234; *Frost* v. *Belmont*, 6 Allen, 152; *Stiles* v. *Municipal Council of Lowell*, 233 Mass. 174.

*Bill dismissed without costs.*