JOHN F. CASEY & others *vs.* CITY OF EVERETT.

Middlesex. March 2, 1953. — May 11, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Everett. School and School Committee. Municipal Corporations,* Munici-
pal finance.

The provision of § 49 of the charter of the city of Everett, St. 1892,
c. 355, that the school committee's estimate of the amount necessary
for the support of the public schools shall be submitted to the mayor,
who "shall recommend [to the city council] such appropriations as
he shall deem necessary," does not exempt the city from the require-
ment imposed by G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939,
c. 294, to "provide an amount of money sufficient for the support of
the public schools as required by this chapter," nor preclude invoca-
tion of the remedy afforded by § 34 where the sum recommended by
the mayor and voted by the council for that purpose is less than the
school committee's estimate.

PETITION, filed in the Superior Court on July 1, 1952.

The case was heard by *Morton,* J.

*Harris E. Albert,* City Solicitor, for the respondent.

*Jerome Medalie,* for the petitioners.

SPALDING, J. This is a petition in equity brought by
more than ten taxable inhabitants of the respondent under
G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294.

The judge made a report of material facts which we sum-
marize as follows: The school committee of Everett sub-
mitted to the mayor an itemized estimate of the amounts
deemed necessary for the support of the schools for the year
1952, the total of which was $1,841,221. The mayor there-
after transmitted to the city council a recommendation that
$1,706,040.41 be appropriated for this purpose, and the
council appropriated this amount. The sum so appropri-
ated was less by $135,180.59 than the estimates submitted
by the school committee. An additional appropriation of
$35,000, however, reduced the amount of this discrepancy

to $100,180.59 and a deficiency in that amount was deter-
mined by the judge.  From a decree ordering the respondent
to provide, by borrowing, the amount of this deficiency
together with a sum equal to twenty-five per cent thereof,
the respondent appealed.  The evidence is not reported.

The sole question presented is whether G. L. (Ter. Ed.)
c. 71, § 34, is controlling.[1]  The respondent contends that
certain provisions of its special charter (St. 1892, c. 355 [2])
exempt it from the requirement imposed by § 34 "annually
[to] provide an amount of money sufficient for the support
of the public schools as required by this chapter."  The pro-
visions relied upon require in substance that the school
committee's requests for appropriations be passed upon by
the mayor, who "shall recommend such appropriations as
he shall deem necessary"; that the school committee shall
incur no liability in excess of the amount appropriated for

---

[1] The pertinent provisions of the statute read as follows: "Every city and
town shall annually provide an amount of money sufficient for the support
of the public schools as required by this chapter.  Upon petition to the superior
court, sitting in equity, against a city or town, brought by ten or more taxable
inhabitants thereof . . . alleging that the amount necessary in such city or
town for the support of public schools . . . has not been included in the
annual budget appropriations for said year, said court may determine the
amount of the deficiency, if any, and may order such city and all its officers
whose action is necessary to carry out such order . . . to provide a sum of
money equal to such deficiency, together with a sum equal to twenty-five
per cent thereof. . . . [W]hen such an order is made after the annual tax
rate has been fixed according to law such sums shall be required by such
order to be provided by borrowing in the same manner and for the same
period of time as is provided under clause (11) of section seven of chapter
forty-four in the case of final judgments, subject to all other applicable pro-
visions of chapter forty-four . . . .  Said court may order that the sum equal
to the deficiency be appropriated and added to the amounts previously ap-
propriated for the school purposes of such city or town in the year in which
such deficiency occurs and may order that the amount in excess of the defi-
ciency be held by such city or town as a separate account, to be applied to
meet the appropriation for school purposes in the following year."

[2] The provisions in question are §§ 49–51: "Section 49.  The school com-
mittee shall in the month of January in each year submit to the mayor an
estimate in detail of the amount deemed by it necessary to expend for its
purposes during the succeeding financial year, and the mayor shall transmit
the same, with the estimates of the departments, to the city council, and shall
recommend such appropriations as he shall deem necessary.  Section 50.
Unless thereto required by law the school committee shall cause no liability to
be incurred and no expenditure to be made for any purpose beyond the specific
appropriation which may be made therefor by the city council . . . .  Sec-
tion 51.  All orders, resolutions and votes of the school committee which
involve the expenditure of money shall be presented to the mayor for his
approval, and thereupon the same proceedings shall be had as are provided
by law in relation to similar orders, resolutions and votes of a city council."

its use by the city council "Unless thereto required by law"; and that the acts of the school committee involving the expenditure of money shall be passed upon by the mayor in the same manner as acts of the city council.

The petitioners, on the other hand, rely upon the Commonwealth's long standing policy with respect to the support and maintenance of the public schools, of which G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294, is the current manifestation. That policy, with the exception of the sanctions for its enforcement, has remained unchanged since 1647.[1] In broad terms it may be stated as a determination by the Legislature that the maintenance of adequate public schools is of paramount importance. Since the enactment of St. 1826, c. 143, § 5, each city and town has been required to elect a school committee to manage the public schools, and to these committees the Legislature has given substantially final authority to decide upon the needs of the school systems in their charge. See *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 328–330.

This is not the first occasion of an apparent conflict between the duties imposed upon a school committee by G. L. (Ter. Ed.) c. 71 and the limitations placed upon municipal expenditures by charter or by the municipal finance act, G. L. (Ter. Ed.) c. 44. See, for example, *Watt* v. *Chelmsford*, 323 Mass. 697; *Attorney General* v. *Woburn*, 317 Mass. 465; *O'Brien* v. *Pittsfield*, 316 Mass. 283; *Hayes* v. *Brockton*, 313 Mass. 641; *Ring* v. *Woburn*, 311 Mass. 679; *Callahan* v. *Woburn*, 306 Mass. 265; *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353; *Decatur* v. *Auditor of Peabody*, 251 Mass. 82; *Leonard* v. *School Committee of Springfield*, 241 Mass. 325. In each of those cases this court recognized, and where possible enforced, the supremacy of the school committee's authority in matters pertaining to the management of the public schools.

The respondent seeks to differentiate this case from those

---

[1] General Laws and Liberties of the Colony of Massachusetts Bay, c. 88, § 2, added May, 1647, reprinted in The Charters and General Laws of the Colony and Province of Massachusetts Bay, Boston, 1814, page 186.

just cited on the basis of the authority given to the mayor in § 49 of its charter to transmit the school committee's request for appropriations to the city council and to "recommend such appropriations as he shall deem necessary." The argument in substance is this: In the above mentioned cases the power of the mayor to recommend appropriations was given in general terms comparable to the provisions of G. L. (Ter. Ed.) c. 44. Those provisions, admittedly, do not impinge upon G. L. (Ter. Ed.) c. 71, § 34. But here the general provisions are supplemented by the precise language of § 49 which is specifically applicable to the school committee's requests for appropriations.

This argument is not persuasive. The procedure generally prevailing in cities and towns is that the school committee submits its requests for appropriations to some body or official charged with the duty of passing upon the appropriation of public funds. The school committee has no power to tax or to appropriate or borrow money, and G. L. (Ter. Ed.) c. 71, § 34, clearly contemplates that the governmental body which has such power may choose to exercise it in derogation of the requirements of the general law governing schools and school committees. In no other way could a deficiency in the "amount necessary . . . for the support of public schools" come about. It is true, as the respondent argues, that § 49 of the charter applies in terms to the school committee, and that it gives to the mayor the authority to "recommend such appropriations as he shall deem necessary." The provision upon which the respondent relies, aside from its specific applicability to the school committee, differs in no significant particular from the general grant of a similar authority to the mayor in § 32 of the charter.[1] Nor does § 49 differ materially from G. L. (Ter. Ed.) c. 44, § 32, as appearing in St. 1941,

[1] "The mayor shall, in the month of January of each year, cause to be made to him by the heads of departments and by all other officers and boards having authority to expend money, detailed estimates of the amounts deemed by them to be necessary for their respective departments for the financial year . . . [ensuing], and he shall . . . transmit such estimates to the city council, recommending appropriations for each department or purpose as he shall deem necessary therefor."

c 473, § 2,[1] which gives to the mayors of all cities except Boston authority similar to that granted by § 32 of the charter before us. It is well settled that despite the importance and the broad sweep of G. L. (Ter. Ed.) c. 44, which regulates municipal finance, § 32 of that chapter does not deprive school committees of the final authority to determine the financial needs of the public schools. *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 331–332. *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 87–89. See *Callahan* v. *Woburn*, 306 Mass. 265, 270, 273; *Hayes* v. *Brockton*, 313 Mass. 641, 649–650. Beyond the point stressed by the respondent, nothing in the city's charter supports the contention that § 49 thereof was intended to deprive the public schools of the city of Everett of the protection of G. L. (Ter. Ed.) c. 71 or to permit the mayor and city council to ignore the basic standards there set out for the maintenance of public school systems throughout the Commonwealth. The charter itself, in §§ 48 and 50, recognizes that the school committee's powers and duties are those imposed by general law; these, in a sense, are incorporated by reference. We are, accordingly, of opinion that the bare reiteration in § 49 of the respondent's charter of a power probably contained in § 32 thereof does not have the effect of cutting down the traditional and well established power of the school committee. We hold, therefore, that the provisions of § 49 of the respondent's charter do not preclude the petitioners from invoking the remedy afforded by G. L. (Ter. Ed.) c. 71, § 34.

We recognize, as the respondent points out, that statutory limitations may be, and have been, imposed upon the powers or duties of a school committee. *School Committee of Gloucester* v. *Gloucester*, 324 Mass. 209, 216. But this court has consistently sought such limitations in express language, *Leonard* v. *School Committee of Springfield*, 241 Mass. 325,

---

[1] "Within forty-five days after the annual organization of the city government in any city other than Boston, the mayor shall submit to the city council the annual budget which shall be a statement of the amounts recommended by him for the proposed expenditures of the city for the then current year."

331–332, or has restricted the operation of an implicit limitation so as to avoid interference "in the traditional supremacy of the school committee in the field of education . . . ." *School Committee of Gloucester* v. *Gloucester,* 324 Mass. 209, 218, 220. Nor is the reliance of the respondent upon *Gorman* v. *Peabody,* 312 Mass. 560, well founded. There a petition under G. L. (Ter. Ed.) c. 71, § 34, was dismissed because the city charter made special provision for submission of "any measure" passed by the school committee to popular vote. Spec. St. 1916, c. 300, § 48. That provision, substantially identical with G. L. (Ter. Ed.) c. 43, § 42, was held to supersede G. L. (Ter. Ed.) c. 71, § 34. Compare, however, *Hayes* v. *Brockton,* 313 Mass. 641, and *Decatur* v. *Auditor of Peabody,* 251 Mass. 82. In the respondent's charter there is no comparable provision whereby the acts of the school committee may be referred to the electorate for approval or disapproval. The power granted to the mayor in § 49 of the respondent's charter is not, in contradistinction to the provisions in the Peabody charter and in the "plan" charters contained in G. L. (Ter. Ed.) c. 43, a manifestation of the "home rule" policy discussed in the *Gorman* case. It cannot be said, therefore, that disapproval by the mayor of proposed expenditures for school purposes stands on the same footing as disapproval by a majority of the voters at a popular election.

No contention is made that the amount of the deficiency determined by the judge was improper, if § 34 was applicable, and we have considered the case on that footing. The final decree is affirmed with costs of this appeal.

*So ordered.*