DONALD A. BELL & others *vs.* TOWN OF NORTH READING.

Middlesex. February 6, 1973. — May 1, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*School and School Committee. Municipal Corporations,* Municipal finance. *Equity Pleading and Practice,* Proceeding respecting support of public schools.

Where a town failed to appropriate the full amount submitted by the school committee as necessary for the support of the public schools, subsequent budget cuts made by the school committee to adjust to the town's appropriation, considered with the minutes of the committee, did not show acceptance of the appropriation, and did not preclude a finding of a deficiency under G. L. c. 71, § 34. [508–510]

In a proceeding under G. L. c. 71, § 34, to establish a deficiency in a town's appropriation for public school purposes, whether the school committee's budget requests as to "mandatory" items are "necessary" is not open to inquiry. [510–511]

In a proceeding under G. L. c. 71, § 34, to establish a deficiency in a town's appropriation for its public schools, an affirmative allegation by the town in its answer that the appropriation made was sufficient for the support of the schools as required by c. 71, though lacking desirable specificity, raised the issue whether cuts made by the town in its appropriation in the amounts requested by the school committee related to items "mandatory" under G. L. c. 71. [511–512]

PETITION filed in the Superior Court on June 8, 1971. The case was heard by *Kalus,* J.

*Jeffrey M. Freedman* for the petitioners.

*Walter G. Bilowz,* Town Counsel, for the Town of North Reading.

KAPLAN, J.  Twenty-three "taxable inhabitants" of the town of North Reading on June 8, 1971, petitioned the Superior Court, sitting in equity, to adjudge under

G. L. c. 71, § 34, as appearing in St. 1939, c. 294 (set out in the margin [1]), that the respondent town had failed to provide an amount of money sufficient for the support of its public schools for the year 1971 as requested by the school committee; to determine the amount of the deficiency; and to order the town to provide that amount plus twenty-five per cent thereof, all in accordance with the cited statute.  The town answered, and a hearing was held, consisting of colloquy with counsel, agreements of counsel, and admission in evidence of minutes of a school committee meeting.  On November 22, 1971, the judge entered a final decree dismissing the petition, and the petitioners appeal. The judge adopted his findings, rulings, and order for decree as a report of material facts.  All the evidence is reported.

We summarize the record (some particulars will be added later in this opinion).  The school committee submitted to the town its itemized estimates of amounts re-

---

[1] "Every city and town shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter.   Upon petition to the superior court, sitting in equity, against a city or town, brought by ten or more taxable inhabitants thereof, or by the mayor of a city, or by the attorney general, alleging that the amount necessary in such city or town for the support of public schools as aforesaid has not been included in the annual budget appropriations for said year, said court may determine the amount of the deficiency, if any, and may order such city and all its officers whose action is necessary to carry out such order, or such town and its treasurer, selectmen and assessors, to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five per cent thereof.   When such an order is made prior to the fixing of the annual tax rate the foregoing sums shall be required by such order to be provided by taxation in the manner set forth in section twenty-three of chapter fifty-nine; and when such an order is made after the annual tax rate has been fixed according to law such sums shall be required by such order to be provided by borrowing in the same manner and for the same period of time as is provided under clause (11) of section seven of chapter forty-four in the case of final judgments, subject to all other applicable provisions of chapter forty-four, except that, in the case of a town, such borrowing shall be made by the town treasurer, with the approval of a majority of the selectmen, and no vote of the town shall be required therefor.   Said court may order that the sum equal to the deficiency be appropriated and added to the amounts previously appropriated for the school purposes of such city or town in the year in which such deficiency occurs and may order that the amount in excess of the deficiency be held by such city or town as a separate account, to be applied to meet the appropriation for school purposes in the following year."

quired for the support of the town's public schools for the year 1971 with the request that the town appropriate the necessary sum. Credit being given for the anticipated receipt of $36,800 in Federal funds, the budget came to $2,972,902. The town did not provide this amount in its appropriation for the public schools for 1971; instead, at the town meeting held on April 12, 1971, the town voted to appropriate only $2,935,808, leaving a deficiency of $37,094.[2] It was this latter amount, together with the statutory twenty-five per cent penalty, that the petitioners sought by the present suit to compel the town to appropriate.

It appears that the town meeting took a series of votes on the school budget as submitted by the school committee, and that the deficiency claimed arose from cuts of $36,884 in the salaries account ($2,420,447 requested, $2,383,563 appropriated) and $210 in the cafeteria director account.

The school committee held a regular meeting on April 27, some two weeks after the town meeting. There was discussion of the action of the town meeting and how the school committee should proceed. The central issue was whether employment contracts which had previously been negotiated with the teachers and with the school custodians should be renegotiated, and whether salaries which had previously been planned for other school employees should be reduced. Earlier, before making up its budget, the school committee had decided upon a general raise, described as a cost of living increase, and this decision had been reflected in the negotiated and budgeted salaries. The committee members agreed that it would be inequitable and detrimental to attempt to reduce those indicated salaries. Accordingly the committee voted without dissent to preserve the employment contracts and salary schedules as budgeted. They then accommodated to the town meeting's action by unanimously ap-

---

[2] This was exclusive of an education appropriation that was not part of the school committee's budget.

proving eleven budget cuts elsewhere on the salaries account. At the same time they voted to apply some of the interest from a certain Flint Fund to the salaries account. The net effect of these steps was to adjust to the town meeting's cut of $37,094 by modifications downward aggregating about $35,000.

1. Adopting a contention made by the town, the judge below rested his dismissal of the petition on the ground that the committee "virtually accepted" the town's appropriation with the $37,094 cut, and that therefore there was no deficiency "as that term is used in" the statute. He further ruled that it was within the power of the school committee to decide "to live within the budget appropriations voted by the Town." [3]

The judge's inference that the school committee accepted the town's emendation of the budget is open to our scrutiny as it is based largely if not altogether on a document, the minutes. *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178. *Hiller* v. *Submarine Signal Co.* 325 Mass. 546, 550–551. *East Coast Aviation Corp.* v. *Massachusetts Port Authy.* 346 Mass. 699, 705.

In *Watt* v. *Chelmsford,* 328 Mass. 430, the Chelmsford town meeting had before it a budget prepared by a school committee whose membership had changed before town meeting time. A school committee member, speaking for a majority of the new committee, recommended certain reductions of the budget which were thereupon voted by the town meeting and ratified the next day by the school committee. The judge's finding that there was no deficiency in the appropriation for the support of the public schools was upheld by this court. The result was sound, for the school committee had itself effectively reduced its budget before an appropriation was voted; the subsequent committee action was a formality. By way of contrast, in the present case the committee's budget adjustments — which

---

[3] As the parties concentrated at the hearing on this question of acquiescence or acceptance, and the judge's findings relate to it, we need not consider whether it was properly raised upon the pleadings.

it had power to make, cf. *Lynch* v. *Fall River,* 336 Mass.
558 — came after the town meeting voted its appropria-
tion without, so far as appears, any guidance from the
school committee.

With ostensible solicitude for the school committee,
the town argues that to disturb the judge's finding would
be to usurp the school committee's final authority to
determine the financial needs of the public schools; its
authority should include the power to approve and ac-
cept the town meeting's budget cuts. But this avoids
the true problem. A school committee is not free to
spend money that it does not have. If its budget request
has not been met, it must live with what it will obtain.
In the present situation, § 34 affords the only remedy
for a deficiency, see *Callahan* v. *Woburn,* 306 Mass.
265, 276–278, and the school committee as a body is
not empowered to bring suit under that statute. Cf.
*School Comm. of Lowell* v. *Mayor of Lowell,* 265 Mass.
353, 356–357. The school committee can hardly await
an action by the "taxable inhabitants" or the Attorney
General or proceed on the assumption that such an action
will be brought and won. In all events the committee
must make at least provisional arrangements to make
do with the money actually appropriated. If this adjust-
ment to the facts of life were held to foreclose suit
under § 34 by the parties entitled, such suits could be
seldom maintained.

The minutes of the school committee meeting of April
27, 1971, show no voluntary acceptance of the budget
cuts. Rather the school committee members evinced
some resentment at the attitude of the finance commit-
tee at the town meeting (presumably it was the finance
committee that had recommended the cuts). School
committee members prudently agreed that for the
future it would be well to make changes in the process
of evolving the budget to encourage closer coöperation
between the two committees. For the present, all un-
derstood that adjustments had to be made, and the
discussion was addressed to the particulars of the ad-

justments.   There is no expression of satisfaction with
or any hint of acceptance of the town meeting's action.
As indicated, the source of the difference between the
school committee and the town meeting may have been
the planned salary increases.   These were preserved by
the school committee, suggesting a continuing disagree-
ment.

Perhaps an explicit statement by a school committee
of satisfaction with or acceptance of a budget cut by
the municipal authority would support a finding that
the school committee adopted the amount actually ap-
propriated as sufficient for the support of the public
schools under c. 71, so that there would be no deficiency
for purposes of § 34; but that is not our case.

2.   The town argues in this court that the petitioners
have not shown that the appropriation voted for 1971
failed to provide, in the words of § 34, "an amount of
money sufficient for the support of the public schools"
of the town "as required by" c. 71.

The town cannot be heard to argue under this head
that the petitioners are obliged to demonstrate in this
suit that the amount requested by the school committee
in its budget was "sufficient" or "necessary" to run the
schools in the sense that the estimates were reasonable
and not excessive or profligate.   For about 150 years the
school committees in this Commonwealth have had "sub-
stantially final authority" to determine the needs of
the school systems.   *Casey* v. *Everett,* 330 Mass. 220,
222.   *Leonard* v. *School Comm. of Springfield,* 241
Mass. 325, 329.   *Lynch* v. *Fall River,* 336 Mass. 558,
559.   Generally speaking, a city or town must accept
the school committe's budget and make an appropriation
accordingly — "Theirs not to reason why."   And so also,
in a suit by the "taxable inhabitants" under § 34 to
compel a city or town to make good a deficiency in a
school appropriation, the court is not to inquire whether
the budget presented by the school committee was an
expedient one.   *Ring* v. *Woburn,* 311 Mass. 679, 683.
*Graves* v. *Fairhaven,* 338 Mass. 290, 293.   The standard

remedy against an extravagant or otherwise misguided school committee is simply to turn the members out of office as their terms expire.

It is to be noted, however, that § 34 speaks of an amount "sufficient for the support of the public schools as required by this chapter," or "necessary . . . for the support of public schools as aforesaid." This is taken to mean that the town's duty, enforceable under § 34, to appropriate in accordance with the budget requests of the school committee, extends only to "mandatory" items; as stated in *Day* v. *Newton,* 342 Mass. 568, 570, "Within a wide limit 'necessary' means reasonably deemed by the committee to bear a relation to its statutory mandate." Here questions of legal interpretation can arise. *Ring* v. *Woburn, supra,* at 685, 691–692. *Day* v. *Newton, supra,* at 570. With respect to other items requested by a school committee, the question of the municipality's duty or option to appropriate will turn on any relevant statutory authority, but the enforcement technique of § 34 is not available. Cf. *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232. On a few occasions this court has held that a given item in a school committee's budget was thus unamenable to § 34, but these are rare situations because the "statutory mandate" manifestly covers a wide field. See *Ring* v. *Woburn, supra.*

In the present case, the town argues that the petitioners have not shown prima facie that the budget cuts applied to mandatory items. There is doubt whether this question was properly raised by the town in its answer. Paragraph 7 of the petition alleged that the school committee duly submitted estimates and requests for an appropriation for the support of the public schools of North Reading for 1971 as required by c. 71. This allegation the town admitted in its answer. The parties agreed that the town failed to appropriate $37,-094 of the requested amount. In another *Watt* case — *Watt* v. *Chelmsford,* 323 Mass. 697 — on similar pleadings and a similar agreed proposition, the court held

that the petitioners had made out a case under § 34; in other words, it was apparently for the respondent town to come forward in its pleading and assert that the cuts which it had made did not relate to mandatory items on the school committee's budget, and this it had not done.[4] The present case differs from the *Watt* case in that the town's answer here went on to allege affirmatively that the appropriation made was sufficient for the support of the schools as required by c. 71, a seeming contradiction of the earlier admission. With misgivings, we accept the affirmative allegations, though lacking desirable specificity, as adequate to raise an issue about whether or to what extent the cuts related to mandatory items. Cf. Rule 9 (c) of the Federal Rules of Civil Procedure. This matter was not explored below, as the decision went off on the school committee's supposed acceptance of the cuts. The minutes of the school committee meeting hint at the possibility that the town's cut in the salaries account was directed in whole or in part to the salaries of teachers and custodians, clearly mandatory items,[5] but this was not demonstrated. The record alludes to a few other items whose status may need further elucidation. See *Ring* v. *Woburn*, 311 Mass. 679; *Attorney Gen.* v. *Ware*, 328 Mass. 18; *Graves* v. *Fairhaven*, 338 *Mass.* 290. The budget as presented to the town meeting does not appear of record, nor do we have the details of the votes at the town meeting. In the circumstances, we think the case should be remanded to the Superior Court so that the issue may be pursued to a conclusion, if that is desired.

3. If the petitioners should finally succeed upon remand, the decree would require the respondent town to provide, in the manner required by G. L. c. 71, § 34, a stated sum, being the amount of the deficiency found

---

[4] In the *Watt* case, as in the present case, the town's answer contained a denial of the conclusion that a deficiency existed.

[5] See *Ring* v. *Woburn*, 311 Mass. 679, 686, 689–693; *Hayes* v. *Brockton*, 313 Mass. 641, 644, 646–647; *Watt* v. *Chelmsford*, 323 Mass. 697, 700; *Attorney Gen.* v. *Ware*, 328 Mass. 18, 20. And as to the cafeteria director account, see *Graves* v. *Fairhaven*, 338 Mass. 290, 292.

in the appropriation for school purposes under c. 71 for the year 1971, plus twenty-five per cent thereof. We point out that such a decree might be merely symbolic, for the amounts provided thereunder would presumably go to reduce what would otherwise have to be appropriated for school purposes in the usual course. Section 34 envisages a suit quickly brought and determined so that, if successful, it results in replacement of the deficiency in the relevant year and accomplishment of the school committee's budgeted program, the twenty-five per cent penalty being carried over to the next year. Regrettably, time overtook that effective remedy long before the case reached this court.

The decree is reversed and the case is remanded to the Superior Court in accordance with this opinion.

*So ordered.*