Mayor of Holyoke *vs.* Board of Aldermen of Holyoke
& others.[1]

Suffolk.  September 12, 1980. — October 30, 1980.

Present: Hennessey, C.J., Quirico, Braucher, Wilkins, & Liacos, JJ.

*School and School Committee,* Budget.  *Municipal Corporations,* Municipal finance, Mayor, Aldermen.

The action of the board of aldermen of the city of Holyoke in voting to exceed the statutory "tax cap" on school department appropriations was lawful, and the mayor's approval of the school department's request to do so was not "required by law" within the meaning of St. 1979, c. 151, § 2.  [709-713]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on June 11, 1980.

The case was reported by *Quirico,* J.

*Peter H. Barry,* Assistant City Solicitor (*Kathleen G. Fallon* with him) for the plaintiff.

*Cornelius J. Moriarty, Jr.,* for the Board of Aldermen of Holyoke.

*Jeffrey M. Freedman* for the School Committee of Holyoke.

*Brian A. Riley* for the Holyoke Teachers Association.

Wilkins, J.  The basic question in this case is whether the board of aldermen of the city of Holyoke has lawfully appropriated for school purposes during the 1981 fiscal year an amount in excess of the amount that, but for such an appropriation, could be available for school purposes under the so called "tax cap" legislation.  St. 1979, c. 151.

The Holyoke school committee, as a "governing body" defined in St. 1979, c. 151, § 2, had no general authority to

_____
[1] The School committee of Holyoke and the Holyoke Teachers Association.

approve a budget for fiscal year 1981 "which [was] greater than [104%] of the budget approved by [it] for the preceding fiscal . . . year." St. 1979, c. 151, § 3. However, the school committee, by a two-thirds vote, could, and did, submit a request to increase the budget limit by a specified amount and that request could "be approved, in whole or in part, by a two-thirds vote of the local appropriating authority." St. 1979, c. 151, § 6. For a city, the "local appropriating authority" is defined as "the council, with the mayor's approval when required by law." St. 1979, c. 151, § 2. It is this definition that brings us to the heart of the basic issue, namely, whether in Holyoke the mayor's approval of the school committee's request to exceed the "tax cap" was required by law. The board of aldermen, which is the equivalent of a city council, purported to approve by a two-thirds vote the school committee's request to exceed the "tax cap." The mayor, however, did not recommend to the board of aldermen that it appropriate funds for school purposes in excess of the "tax cap," although he did transmit the school committee's request to do so to the clerk of the board of aldermen prior to that board's purported vote to appropriate the funds requested by the school committee.

We conclude that the action of the board of aldermen in voting to exceed the statutory "tax cap" on school department appropriations was lawful and that the mayor's approval of the school department's request to exceed the "tax cap" was not "required by law" within the meaning of St. 1979, c. 151, § 2. On September 22, 1980, in order to assist the city in the calculation of its tax rate for the 1981 fiscal year, we entered an order remanding the case to the single justice for entry of a judgment consistent with our conclusion.[2]

---

[2] The order of September 22 reads as follows:

"After hearing it is ORDERED that the case is remanded to the Single Justice for entry of a judgment that the Board of Aldermen of Holyoke lawfully voted under St. 1979, c. 151, to approve the request of the School Committee to increase the budget limit imposed on it by St. 1979, c. 151, § 4, for the fiscal year 1981 by $706,047.82 and that the mayor's approval of that increase was not required by law.

"Rescript will issue forthwith. An opinion or opinions will follow."

The case is here on a reservation and report by a single justice on the pleadings and a statement of agreed facts. We summarize the facts. In January, 1980, the school committee submitted a budget for the 1981 fiscal year to the mayor. The budget exceeded the "tax cap" by approximately $741,000. The mayor returned the budget to the school committee, pointing out the 104% limitation of the "tax cap" and the necessity of obtaining approval from the board of aldermen if the budget should exceed the "tax cap." On February 20, 1980, the school committee made relatively minor reductions in its proposed budget and voted unanimously "to ask the full Board of Aldermen for their support in waiving the tax cap." By a further vote, on February 25, the school committee voted unanimously to request that the mayor transmit the full school budget as approved by them on February 20 to the board of aldermen and that the board of aldermen approve "an exemption from the 'tax cap' since the Budget exceeds the same by $706,007.82." A copy of this vote was sent to the mayor by letter dated February 29, and on that same day, without recommendation, the mayor gave a copy of the letter and the budget to the clerk of the board of aldermen.

The mayor subsequently submitted the city's entire 1981 fiscal year budget to the board of aldermen at its meeting of March 18. He included and recommended for school purposes an amount that was only 104% of the total of the school budget for the 1980 fiscal year. On April 16, the board of aldermen voted, by 13 to 2, to "[g]ive relief to the School Department of the 4% Tax Cap and adopt the School Budget . . . submitted by the School Committee." On May 2, following advice from the city solicitor's office that its earlier vote was incorrect in form, the board of aldermen voted on the school department budget, 10 to 5, "to increase the budget limit for fiscal 1981 . . . by $706,047.82 so that the budget limit as so increased will be $12,672,015.24.[3] This vote was referred to the mayor who,

---

[3] The parties appear to agree that as to the school budget the excess over the "tax cap" is $706,047.82 and not the $706,007.82 (or $40 less) set forth

on May 6, 1980, signed the following statement: "As part of the Local Appropriating Authority, I hereby disapprove of a waiver of the tax cap under provisions of Chapter 151, Acts of 1979."

The mayor thereafter commenced this action seeking a declaration that the votes of the board of aldermen purporting to approve the school committee's request to exceed the "tax cap" were invalid and that the mayor must "initiate" any appropriations for school purposes in excess of the "tax cap."

The "tax cap" legislation (St. 1979, c. 151) gave the mayor no authority to act that he did not have prior to the enactment of that legislation with respect to school department appropriations. The question, then, is what is meant by the provision in St. 1979, c. 151, that the mayor's approval of a school committee's request to exceed the "tax cap" is necessary "when required by law."

School committees traditionally have had authority over their own budgets. See *Bell* v. *North Reading,* 363 Mass. 505, 510 (1973); *Casey* v. *Everett,* 330 Mass. 220, 222 (1953); *Ring* v. *Woburn,* 311 Mass. 679, 683 (1942); *Leonard* v. *School Comm. of Springfield,* 241 Mass. 325, 329 (1922). By law, prior to the "tax cap" act, barring any special legislation, a municipal appropriating authority was required to appropriate the funds that its school committee designated as necessary for school purposes. G. L. c. 71, § 34. See *Pirrone* v. *Boston,* 364 Mass. 403, 407 (1973); *Bell* v. *North Reading, supra*; *Ring* v. *Woburn, supra* at 691; *Decatur* v. *Auditor of Peabody,* 251 Mass. 82, 89 (1925). If the requested amount were not appropriated, legal action (traditionally in the form of a taxpayers' suit) could be taken to obtain the requested funds. G. L. c. 71, § 34. The fact that mayors have had the power by statute to make recommendations concerning the municipal budget, and city councils (or boards of aldermen) could not appropriate

---

in the copy of the vote included in the February 29, 1980, letter to the mayor.

amounts in excess of the mayors' recommendations (see
G. L. c. 44, § 32) has consistently been rejected as a valid
ground for denying a school committee the amount it has re-
quested as necessary for public education. See *Casey* v.
*Everett, supra* at 222, and cases cited; *Hayes* v. *Brockton,*
313 Mass. 641, 649-650 (1943); *Decatur* v. *Auditor of Pea-
body, supra* at 86-88; *Leonard* v. *School Comm. of Spring-
field, supra* at 331-332.

It was thus the mayor's obligation, with minor exceptions
for items not involved in this case, to submit the school
budget to the board of aldermen. Although, prior to the en-
actment of St. 1979, c. 151, the mayor had the power not to
recommend the amount requested, any deficiency in his
recommendation could have been made up by an appropri-
ate court order. Under the new "tax cap" legislation, how-
ever, if a mayor does not recommend any amount requested
by the school committee in excess of 104 % of the prior year's
budget, a court order simply to restore the amount request-
ed would not be appropriate because a two-thirds vote of
the city council or board of aldermen is required to exceed
the "tax cap." All that a court can do in such a case today is
to order the mayor to submit the school committee's budget
request in excess of the "tax cap" to the city council or board
of aldermen for its action.

In the circumstances before us, no such order was re-
quired because the mayor did transmit the school commit-
tee's request for a waiver of the "tax cap" to the board of al-
dermen and that board approved it by a two-thirds vote.
We think the absence of a recommendation from the mayor
should not be fatal to the validity of the vote of the board of
aldermen. In submitting the school committee's budget to
the board of aldermen, the mayor merely did what a court
could have ordered him to do. G. L. c. 71, § 34. The
board of aldermen acted as it eventually would have had
the right to act after a court-ordered submission of the
school committee's request. It would be a triumph of form
over substance for us to hold that because the mayor had the
power, but not the right, to decline to include the school

committee's budget in his recommended budget, a suit must now be brought to compel the mayor to make a new submission to the council. The mayor's approval of the school committee's recommendation was not "required by law" because in the final analysis the law does not require the mayor's approval in order to make available the funds requested by the school committee.[4]

Accordingly, we remanded the case to the single justice for entry of a judgment in the form set forth in the second footnote of this opinion.[5]

---

[4] Although the mayor was required to submit the school committee's budget to the board of aldermen, he had the right to urge the board of aldermen to reject the school committee's request for approval of an increase in its budget to an amount in excess of the "tax cap."

[5] The mayor makes no argument before us that his approval of the school committee's action or of the board of aldermen's vote was required under any provision of the charter of the city. We have reviewed the charter and concur with the mayor's conclusion not to rely on any of its provisions. See Casey v. Everett, 330 Mass. 220 (1953).