SUPERINTENDENT OF SCHOOLS OF LEOMINSTER & others[1] *vs.*
MAYOR OF LEOMINSTER.

Worcester. February 1, 1982. — May 4, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*School and School Committee*, Budget. *Municipal Corporations*, Munic-
ipal finance. *Proposition 2½. Leominster.*

Under G. L. c. 71, § 34, as amended by St. 1980, c. 580, § 7 (Proposition
2½), the mayor of a city operating under a Plan B charter is not re-
quired to include in the annual city budget a recommendation of funds
for the support of the public schools in the amount requested by the
school committee, but may reduce the budget submitted by the school
committee before submitting the total city budget to the city council.
[116-120]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 21, 1981.

The case was heard by *Rutledge*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Robert B. Shumway* for the plaintiffs.

*John J. Curley, III*, for the defendant.

*Brian A. Riley*, for Massachusetts Teachers Association,
amicus curiae, submitted a brief.

*Kristen Reasoner Apgar*, for Board of Education, amicus
curiae, submitted a brief.

ABRAMS, J.    Statute 1980, c. 580, commonly known as
"Proposition 2½," took effect on December 4, 1980.[2]   Sec-

---

[1] The other plaintiffs are the members of the school committee of Leom-
inster, excluding the mayor, who is chairman of the school committee.

[2] At the November, 1980, general election, St. 1980, c. 580, was adopted
by the voters, acting under the initiative process of the Constitution of the
Commonwealth. *Massachusetts Teachers Ass'n* v. *Secretary of the Com-
monwealth*, 384 Mass. 209, 212 (1981).

tion 7 of that Act amended G. L. c. 71, § 34, the statute which had, historically, granted fiscal autonomy to school committees in municipalities other than Boston. *Pirrone* v. *Boston*, 364 Mass. 403, 406-407 (1973). *Casey* v. *Everett*, 330 Mass. 220, 222, 224 (1953). *Ring* v. *Woburn*, 311 Mass. 679, 694-695 (1942). Section 7 "'limit[s] the amount of money required to be appropriated for public schools to that amount voted upon by the local appropriating authority.'" *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 231 (1981). In view of this change, the issue in this case is whether the mayor of the city of Leominster is required to submit to the city council, without change, the budget proposed by the school committee.[3] We conclude that the mayor is not a mere conduit for conveying the demands of the school committee to the city council. The mayor has the authority to recommend a total municipal budget (including his recommendation for an appropriation for school purposes) to the city council.

We summarize the agreed facts. The school committee, by a vote of six to one, approved a school budget for fiscal year 1982 of $10,015,377.[4] The mayor, who is chairman of the school committee, cast the only negative vote. The budget was presented to the mayor with the request that he submit it to the city council. G. L. c. 44, § 32.[5] The mayor refused. Instead, the mayor recommended a reduced budget of $8,402,000,[6] as part of the total municipal budget. The school committee's budget projected a reduction in administrative staff of 23.5%, a reduction in teaching staff

---

[3] The Massachusetts Teachers Association and the Board of Education filed briefs, as amicus curiae, on behalf of the plaintiffs.

[4] The agreed facts stated that the budget was made up of $7,886,419 for salaries, and $2,143,958 for expenses. We accept the parties' agreed facts although our calculations differ.

[5] The city council may approve, reduce, or reject the amount recommended by the mayor in the annual budget. G. L. c. 44, § 32.

[6] According to the agreed facts, the mayor's proposed budget was made up of $6,597,177 for salaries, and $1,805,392 for expenses. We accept the agreed facts although our calculations differ.

of 19.6%, and a reduction in the nonprofessional staff of 35%. The mayor's proposed budget required further reductions in staff.

On May 21, 1981, the plaintiffs filed a complaint in the Superior Court, seeking injunctive relief and declaratory relief pursuant to G. L. c. 231A. The plaintiffs asked the court to declare that the mayor is required to submit to the city council the budget proposed by the school committee.[7] After a hearing, the judge entered a judgment which declared that the mayor is not required to submit the school committee's proposed budget to the city council without change. We granted the plaintiffs' application for direct appellate review. We affirm.

The fiscal autonomy of school committees to provide for public education has been the law in this Commonwealth since the middle of the Nineteenth Century. See *Batchelder* v. *Salem*, 4 Cush. 599 (1850).[8] Statute 1980, c. 580, § 7 (amending G. L. c. 71, § 34), ended this long tradition by eliminating the enforcement mechanism of the ten taxpayer suit to compel school appropriations. Statute 1980, c. 580, § 7, further provides that "no city or town shall be required to provide more money for the support of the public schools than is appropriated by vote of the legislative body of the city or town."

The plaintiffs concede that the school committee's unfettered authority over its own budget (see, e.g., *Bell* v. *North*

---

[7] In response to the mayor's claim that the plaintiffs lacked standing to challenge his action, the judge ruled that the plaintiffs had standing under G. L. c. 231A. On appeal, the mayor correctly does not challenge that determination. General Laws c. 231A, § 1, "may be used in the superior court . . . to obtain a determination of the legality of the administrative practices and procedures of any municipal . . . official which practices or procedures are alleged to be in violation of . . . laws of the commonwealth . . . . [P]ractices or procedures mean the customary and usual method of conducting municipal . . . business." G. L. c. 231A, § 2, as amended through St. 1974, c. 630, § 1.

[8] The origins of fiscal autonomy may be traced as far back as the Seventeenth Century. "As early as 1647 there was a law of the Colony requiring that schools be provided, and imposing a penalty for the neglect so to do." *Callahan* v. *Woburn*, 306 Mass. 265, 276-277 (1940).

*Reading,* 363 Mass. 505, 510 [1973]) has been eliminated by St. 1980, c. 580, § 7. The plaintiffs argue, however, that prior law, and the broad responsibilities of the school committee, compel the inference that the school committee, and not the mayor, should have the final authority to determine, subject to city council approval, the appropriation necessary to fund the public schools. We do not agree.

Under prior law (see G. L. c. 71, § 34, as in effect prior to December 4, 1980), the school committee of a city or town, except Boston, each year established a budget sufficient for the support of the public schools. Although the mayor or the city council could reduce the budget submitted by the school committee, neither had final authority to do so. "By law . . . a municipal appropriating authority was required to appropriate the funds that its school committee designated as necessary for school purposes." *Mayor of Holyoke* v. *Aldermen of Holyoke,* 381 Mass. 708, 711 (1980).

The mayor traditionally had the "power"[9] not to recommend the appropriation requested by the school committee,[10] but the exercise of that power was futile since "any deficiency in his recommendation could have been made up by an appropriate court order." *Mayor of Holyoke* v. *Aldermen of Holyoke,* 381 Mass. 708, 712 (1980). See *Pirrone* v. *Boston,* 364 Mass. 403, 411 (1973); *Casey* v. *Everett,* 330 Mass. 220, 224 (1953); G. L. c. 71, § 34 (as in effect prior to December 4, 1980). Under St. 1980, c. 580, § 7, school

---

[9] Under G. L. c. 44, § 32, as amended through St. 1975, c. 26, § 1, the mayor must "submit to the city council the annual budget which shall be a statement of the amounts recommended by him for the proposed expenditures of the city for the next fiscal year." The school committee's budget is submitted to the city council as part of the annual budget. *Young* v. *Worcester,* 333 Mass. 724, 728 (1956). The budget must be submitted "[w]ithin ninety days after the annual organization of the city government." G. L. c. 44, § 32.

[10] In the past, the mayor of Leominster has, without objection, submitted to the city council a budget different from that proposed by the school committee. The city of Leominster operates under the provisions of a Plan B charter (a "strong mayor" plan). See G. L. c. 43, §§ 56-63.

committees are no longer exempt from the budgetary process mandated by G. L. c. 44, § 32. The school committee must now share the city's limited financial resources with other municipal departments.[11]

The plaintiffs claim that the mayor's power to recommend a budget for the school committee as part of the city budget deprives the city council of the opportunity to consider and act upon the budget as proposed by the school committee. The plaintiffs argue that since the city council cannot increase an appropriation over the amount recommended by the mayor (see note 5, *supra*),[12] the ability of the school committee to meet the legal obligations imposed by G. L. c. 71 may be frustrated. The city is obligated to provide sufficient funds for its public schools. G. L. c. 71, § 34, as amended through St. 1980, c. 580, § 7. See *Board of Educ.* v. *Boston, ante* 103, 112 (1982). The mayor does not argue otherwise. He claims that his budget would not deprive "any child in the school system of the City of Leominster . . . of an education at the public expense." In the Superior Court, the plaintiffs did not argue that the appropriation recommended by the mayor for school purposes was insufficient to meet the city's educational obligations. See G. L. c. 71. The plaintiffs limited their arguments to whether the mayor was required to present the school committee's proposed budget to the city council.

---

[11] The history of Proposition 2½ lends support to our analysis. *Boston* v. *Massachusetts Bay Transp. Auth.*, 373 Mass. 819, 826 n.9 (1977). By St. 1981, c. 782, the Legislature amended Proposition 2½. An original version of the amendment was passed by the House of Representatives on September 14, 1981. Section 16 of the proposed bill would have required the mayor to include in the annual budget a "recommendation for the support of schools in the amount requested by the school committee." 1981 House Doc. No. 7153, at 10. This provision was not included in the final amendment. St. 1981, c. 782. However, consideration and rejection of various proposed measures do not control our decision. *Franklin* v. *Albert*, 381 Mass. 611, 616 (1980).

[12] The city council may reject the entire city budget or portions of it and recommend to the mayor that more money be budgeted for the schools and, consequently, less for other municipal departments. The plaintiffs agree that their proposed budget could be forwarded to the city council, but argue that such an act would be futile. See G. L. c. 44, § 32.

The plaintiffs also argue that, in view of the school committee's broad responsibilities, its budget should be forwarded to the city council as proposed by it. In effect, the plaintiffs seek to avoid the thrust of G. L. c. 44, § 32 (which requires the mayor to submit an annual budget, including the school committee's budget), by asking us to read into the statutory scheme a special budgetary procedure for school committees. This we should not do. "[T]he words of a statute ordinarily are to be taken in their common and approved meaning. Where they are clear and explicit — where they convey a thought plainly and adequately — they are to be taken as expressing that thought. Other and further implications are not to be given them." *Sampson* v. *Treasurer & Receiver Gen.*, 282 Mass. 119, 122 (1933). General Laws c. 44, § 32, requires the mayor to submit a total annual budget to the city council, including the budget for the schools. "The words of [a] statute cannot be stretched beyond [their] fair meaning . . . ." *Holbrook* v. *Randolph*, 374 Mass. 437, 440-441 (1978). General Laws c. 44, § 32, does not support the plaintiffs' contention that the school committee is entitled to a budgetary procedure which differs from that followed by other municipal departments.

Further, the record does not support the plaintiffs' assertion that the procedure mandated by G. L. c. 44, § 32, destroys the function of the school committee. The school committee retains the authority to determine expenditures within the total appropriation. St. 1981, c. 782, § 14. *School Comm. of Boston* v. *Boston*, 383 Mass. 693, 705 (1981) . Moreover, "[t]he school committee may make all reasonable rules and regulations for the government, discipline and management of the schools under their charge. This includes a determination within the bounds set by the statutes of the subjects to be taught and the nature of the schools to be maintained and the exercise of discrimination, insight and wisdom in the election of teachers and in the general supervision of the school system, with all the incidental powers essential to the discharge of their main functions." *Leonard* v. *School Comm. of Springfield*, 241 Mass.

325, 330 (1922).[13] In short, the school committee retains all its broad powers and responsibilities, but it no longer has authority over its own budget. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 230-231 (1981). "It is certainly neither impermissible nor unusual for the Legislature to impose responsibilities on public officials who do not have complete authority to decide how much money will be provided them in order to fulfil those responsibilities." *Pirrone* v. *Boston,* 364 Mass. 403, 411 (1973).

We affirm the judge's declaration that the mayor is not required to include in the annual city budget a recommendation for the support of the public schools in the amount requested by the school committee. The mayor has the authority to reduce the budget submitted to him by the school committee before submitting the annual total city budget (including the proposed appropriation for school purposes) to the city council.

*Judgment affirmed.*

---

[13] The school committee's traditional statutory powers also include, for example, G. L. c. 71, § 37 (school committee has general charge over public schools); G. L. c. 71, § 37A (school committee may receive and expend grants and gifts for educational purposes); G. L. c. 71, §§ 37E & 37F (school committee authorized to hire separate legal counsel for collective bargaining and general school purposes); G. L. c. 40, § 4E (authorizing school committee to establish educational collaboratives with other school committees); G. L. c. 71, §§ 47 & 71E (school committees may make expenditures for adult education, community schools, and athletics from "separate accounts").