Tucker, Richard T., J.
The plaintiff, Leicester School Committee (School Committee) seeks in its Complaint injunctive and declaratory relief as well as relief in the form of mandamus against the defendants Town of Leicester (Town), the Leicester Town Accountant, Sandra Buxton (Buxton or Town Accountant), and the Leicester Treasurer and Tax Collector, Deborah J. Kristoff (Kristoff or Treasurer). The gravamen of this action is the School Committee’s attempt to use funds available from its Fiscal Year 2010 budget towards prepayment of special education services (SPED), including summer school tuitions for Leicester special needs students during Fiscal Year 2011. The School Committee states that such prepayment of services is explicitly within their power and authorization under G.L.c. 40, §4E and G.L.c. 71, §71B.
The Town, through its Treasurer and Town Accountant have refused to appropriate said funds as sought and argue that prepayment is inappropriate in that the School Committee has never submitted bills or vouchers as are statutorily required for the payment of any public bill. Moreover, the Town maintains in its memorandum that prepayment would violate the “clear and overarching statutoiy requirements relating to the payment of bills within fiscal years and ordering unexpended funds to return to the General Fund to be further appropriated by the voter/tax payer.” Lastly, having no shortfall in its budget, the Town argues that the School Committee certainly cannot demonstrate irreparable harm as it was granted full appropriation for its Fiscal Year 2011 budget at the May 2010 town meeting.
The amount in issue of the anticipated prepayment is estimated to be $419,624.82 and represents a significant amount, both in relation to the School Committee’s overall operation, as well as the general finances of the Town.[1]
Trial was held before me sitting without a jury on August 18 and August 19, 2010, after which the parties were granted until September 10, 2010 for submission of additional memoranda. Trial testimony was submitted by the Leicester Superintendent of Schools, Paul Soojian, the Director of Finance and Operations, Christine Johnson, the Leicester Town Accountant, defendant Sandra Buxton and the Leicester Town Administrator Robert Lee.
Upon the testimony that I find to be credible, the review of the exhibits offered at trial and the oral arguments and written memoranda of counsel for the parties, I find and rule as follows.
FINDINGS OF FACT
I make the following findings of fact generally, reserving additional specific findings for the discussion of the issues:
(1) the School Committee is obligated to provide special education services for its special needs students pursuant to G.L.c. 71B (STIPULATED BY BOTH PARTIES);
(2) the School Committee is a member of the Southern Worcester County Educational Collaborative, which was created pursuant to G.L.c. 40, §4E and G.L.c. 71B to provide special education programs and services for its members (STIPULATED BY BOTH PARTIES);
(3) the Southern Worcester County Collaborative Board (“Collaborative Board”) determines the overall administrative and program costs and the mandated contributions of each Member Town and District, including the School Committee. The Collaborative Agreement requires the School Committee to pay its proportionate share of program costs and its equal share of administrative costs annually. The School Committee must have its annual share paid as follows: (1) twenty-five (25%) percent on or before July 1; (2) fifty (50%) percent on or before October 1; (3) seventy-five (75%) percent on or before January 1; and (4) one hundred (100%) percent on or before April 1 (STIPULATED BY BOTH PARTIES);
(4) in addition, the School Committee is required to pay program costs to the Collaborative Board for a summer session for special needs students, extending from July 1 through August 31 annually. The School *468 Committee must pay program costs for the summer session on or before July 1 (STIPULATED BY BOTH PARTIES);
(5) Aside from the $203,000.00 that the School Committee agreed to return to the Town’s General Fund at the end of Fiscal Year 2010, the School Committee’s Fiscal Year 2010 budget currently has between $352,807.00 and $464,440.00 remaining in unexpended and unencumbered funds, depending upon whether $109,633.00 in so-called Circuit Breaker reimbursements are charged to a special education appropriated line item or placed in a special education revolving fund. The School Committee intended to use these unexpended funds from its Fiscal Year 2010 budget toward prepayment of special education services in Fiscal Year 2011 (STIPULATED BY BOTH PARTIES);
(6) On June 7, 2010, the School Committee voted to authorize the expenditure from available funds in its Fiscal Year 2010 budget to prepay special education services for Fiscal Year 2011 (STIPULATED BY BOTH PARTIES);
(7) Any unspent and unencumbered amounts remaining in the School Committee’s Fiscal Year 2010 budget will be returned to the Town’s General Fund, in the absence of the Order entered by the Court on June 30, 2010 (STIPULATED BY BOTH PARTIES);
(8) Amounts transferred to the Town’s General Fund cannot be expended absent an appropriation by town meeting, the Town’s local legislative and appropriating body (STIPULATED BY BOTH PARTIES).
(9) The School Committee budgets for Fiscal Year 2010 and Fiscal Year 2011 were fully funded and approved at the corresponding May town meetings prior to the start of each fiscal year.
(10) The tax rates are set by the Town based on the actual operating expenses incurred during the fiscal year period.
(11) In the past three fiscal years, prepayment of School Committee obligations were permitted: in Fiscal Year 2009 - $17,000.00 in prepayments; in Fiscal Year 2008 - $340,000.00 in prepayments; and in 2007 - $156,000.00 in prepayments.
(12) In December of 2009 the Town and its departments had numerous discussions regarding budget cuts and fiscal restraints resulting from the downturn in the economy. At discussions with the School Committee it was agreed that the School Committee would return $203,000.00 to the Town from its Fiscal Year 2010 budget in an effort to combat an anticipated Town deficit and avoid layoffs. No agreement was made at that time that in exchange for this $203,000.00 being returned to the Town, the School Committee could prepay services to be provided in Fiscal Year 2011 from funds remaining from the Fiscal Year 2010 budget.
(13) At the June 2, 2010 meeting, the Leicester Board of Selectmen voted to direct the Town Accountant and Town Treasurer not to approve prepayment of SPED summer services if such requests did not comply with the Department of Revenue regulations relating to there being a vendor contract in existence requiring prepayment and there being no prepayment of services which would result in the payment of more than four quarters of services for any student within a single fiscal year.
(14) In regard to the prepayments in issue, theTown Accountant requested of the School Committee supporting written contracts to determine whether prepayment was required by the vendors in said contracts.
(15) The contracts of the vendors for Summer SPED Services did not contractually require prepayment.
(16) All of the bills in question relate to the prepayment from funds from the Fiscal Year 2010 School Budget for services to be provided in Fiscal Year 2011 (after 7.1.10). The payment of all these bills was funded in the Fiscal Year 2011 School Committee Budget approved at town meeting in May 2010.
(17) Although the bills for the prepayment of SPED summer services were submitted after the due date for the receipt of all final Fiscal Year 2010 bills by the School Committee, this was not an unusual occurrence nor the reason for the disapproval of the prepayments by the Town and Town Accountant. Prepayment of bills was disapproved based upon (1) the Town’s belief that payment in one fiscal year for services to be provided in a later fiscal year violates Department of Revenue regulations; (2) the Town was not provided with the contracts of vendors providing summer services that required prepayment; and (3) the Town claimed not to be able to discern whether prepayment would result in payment of more than twelve months (four quarters) of services in any one fiscal year for any student in violation of Department of Revenue regulations.
DISCUSSION; RULINGS OF LAW AND ORDER FOR JUDGMENT
The School Committee maintains that its authority to prepay for SPED services is set forth by statute, G.L.c. 71, §71D, and by the case law as set forth in School Committee of Wilmington v. Town Accountant of Wilmington, 19 Mass.App.Ct. 964f (1985). Section 7ID of Chapter 71 of the General Laws provides:
Section 7 ID. A school committee of any city, town, or regional school district may authorize the prepayment of tuition for a period not exceeding three months to any approved private school or approved program source which a student is attending under the provisions of chapter seventy-one B, and the city, town or regional school district treasurer shall be required to approve and pay such monies in *469 accordance with the authorization of the school committee.
While the statute appears to expressly permit the prepayment of three months of tuition for Chapter 7 IB students (students with special needs), the Town argues that it does not expressly permit the prepayment for services to be received in a future fiscal year. The School Committee argues that crossing the fiscal year boundaries is implicit in the authorization of prepayment of services and that the statute clearly does not restrict when such prepayments may be made.
The Town further argues that G.L.c. 71, §34 provides that “no . . . town shall be required to provide more money for the support of the public schools than is appropriated by vote of the legislative body of the . . . town.” Since the approval of the Fiscal Year 2011 School Committee budget includes the payment of the billing for these Fiscal Year 2011 services, their prepayment with Fiscal Year 2010 funds results, it is alleged, in a violation of section 34. Additionally, G.L.c. 41, §56 permits the approval for payment of bills by the Town for services if “the services were actually rendered to or for the town as the case may be . . Lastly, the defendants rely on an advisory opinion rendered by the Department of Revenue that the annual operating budget of a town is intended to pay that fiscal year’s operating expenses, not expenses attributable to obligations of a prior or subsequent year:
We don’t think there is a right to encumber funds from one fiscal year’s budget to pay SPED bill of the following fiscal year. Ch.71 §71D allows the prepayment of up to 3 months worth of tuition to SPED providers, which creates an exception to the general rule of Ch.41, §56 that bills cannot be paid before goods have been delivered or services provided. That prohibition could raise serious cash-flow problems for some SPED providers which §7ID allows a municipality to avoid. Nothing in §71D suggests that it is intended to allow transfers between differentfiscal years’ budgets, or to authorize the payment of more than 12 months worth of SPED tuition for any student.
End-of-fiscal year encumbrances are used to insure that appropriation balances for goods or services for which the town has not yet been billed in the current fiscal year remain available to pay those obligations. In the case of prepayments of SPED tuitions under §7 ID, if the contract with the SPED vendor does not require a prepayment by June 30, there is no basis for encumbering, because the services relate to the following fiscal year. In such a case, the schools can make the contract before June 30 based upon the following year’s appropriation. Ch.71 §49A. §71D only becomes relevant if the payment is due before July 1, which could not be done under the authority of §49A. (Emphasis original.)
DOR Opinion as set forth by Daniel J. Murphy, Tax Counsel, Bureau of Municipal Finance Law, August 12, 2009.
Despite these statutoiy and regulatoiy provisions, the case law interpreting a school committee’s right to prepayment for services had decidedly gone against the Town’s position. In School Committee of Wilmington v. Town Accountant of Wilmington, 19 Mass.App.Ct. 964 (1985), the Appeals Court upheld a Superior Court judge whose order declared that the school committee was “authorized to spend sums appropriated for its fiscal year 1983 budget on items which will be used by the .. . schools in later fiscal years ...” Id. at 964. If purchase orders were delivered to the Town Accountant during the 1983 Fiscal Year it shall be charged to Fiscal Year 1983 even though the purchase orders were for materials to be used in Fiscal Year 1984. Id. at 964-65. The Wilmington court expressly held that such a result was consistent with G.L.c. 71, §34. Although §34 provides that towns are not required to provide more funding of schools than is appropriated by the vote of the legislative body of the town, the Wilmington court emphasized the statute’s additional provision that said vote of the legislative body shall establish only the total appropriation for the public schools “but may not limit the authority of the school committee to determine expenditures within the total appropriation.”[2]
Historically, school committees generally “have enjoyed the authority to use funds appropriated for school purposes as they see fit ‘even to the extent of diverting sums specifically allocated in the budget from one use to another.’ ” Id. at 704 citing Fitchburg Teachers Ass’n v. School Committee of Fitchburg, 360 Mass. 105, 108 (1971); Collins v. Boston, 338 Mass. 704, 708-09 (1959).
Statute 1980, c. 580, commonly known as “Proposition 2 1/2,” changed the historical fiscal autonomy of school committees and limited school committees funding to that which was appropriated by the local appropriating authority, which change is now reflected in G.L.c. 71, §34. Superintendent of Schools v. Mayor of Leominster, 386 Mass. 114, 115 (1982). School committees retain, however, “the authority to determine expenditures within the total appropriation.” Id. at 119 citing School Comm. of Boston v. Boston, 383 Mass. 693, 705 (1981).
In the instant action I find that, notwithstanding the opinion of the Department of Revenue, nothing in the case law or the provisions of G.L.c. 71, §71D prohibits the Leicester School Committee from making prepayment from Fiscal Year 2010 funds for services that will be received and completed during the first three months of Fiscal Year 2011. In doing so the School Committee is exercising its broad authority to determine expenditures from its Fiscal Year 2010 budget. Not being prohibited by law, I find and rule that the Leicester School Committee may prepay with *470 funds from the Fiscal Year 2010 budget up to three months of SPED services or tuition to be received during Fiscal Year 2011.
ORDER FOR JUDGMENT
Judgment shall enter in favor of the plaintiff, the Leicester School Committee as follows:
A mandatory injunction shall enter ordering the Town of Leicester, acting through its Town Accountant, Town Treasurer and Tax Collector to make prepayments for special education services received during the first three months of Fiscal Year 2011 using funds available from the School Committee Fiscal Year 2010 budget, which funds were the subject of a preliminary injunction dated June 30, 2010 as modified by order dated August 18, 2010.
Claims for all other relief sought are dismissed.

 This Court issued, after hearing, a preliminary injunction on June 30, 2010 ordering “that until further order of the Court the Defendants are directed to take any and all actions necessary to encumber any remaining funds in the Leicester School Committee fiscal 2010 budget and any other action necessary to assure that such funds will be available without further appropriation for prepayment of special education tuitions should said payments be determined by the Court to be proper.” On August 18, 2010 that order was modified upon the assent of both parties to allow the Town Accountant and Treasurer/Tax Collector to allocate and encumber to the General Fund $203,000 of this fund.

 School committees are mandated by law to provide and payforthe needs ofits special education students. G.L.c. 71B, §5; School Committee of Brookline v. Bur. of Spec. Educ. Appeals, 389 Mass. 705 (1983).